SCHOOL DISTRICT V. MAURY.

Decided October 25, 1890.

1. *School board —Authority to dismiss teacher.*

The authority conferred upon the county examiner to revoke the license of a school teacher for certain causes (Mansf. Dig., sec. 6187) is not exclusive of the right of the board of directors to terminate a contract of employment of a teacher for incompetency or gross immorality.

2. *Teacher's contract— What breaches may not be waived by the board.*

Although the board of directors by their conduct may waive a compliance on the part of the teacher with certain kinds of regulations intended for his guidance, his implied undertaking that he is not incompetent or immoral, assumed for the benefit of the pupils and patrons of the school, cannot be waived, so long as it impairs his services or prejudices the welfare of the school.

APPEAL from *Sebastian* Circuit Court, Fort Smith District.

JOHN S. LITTLE, Judge.

Maury sued the school district of Fort Smith for breach of a contract of employment as teacher, alleging that he was wrongfully discharged by the board of directors before his term of employment expired. Defendant answered that

plaintiff was discharged for incompetency and immorality. From a judgment in plaintiff's favor defendant has appealed.

*J. L. Hendricks* for appellant.

The court erred in excluding evidence offered to show the incompetency and immoral character of appellee, and in holding that his license was, until revoked by the examiner, conclusive as to his competency and good moral character. The board had a right to discharge for immoral deportment, incompetency or breaches of rules and regulations. Mansf. Dig., secs. 6242, 6245, 6266.

*T. S. Osborne* and *E. E. Bryant* for appellee.

1. The court properly excluded all evidence to show incompetency or immoral character. The determination of the county examiner is final. Mansf. Dig., sec. 6187; 21 N. W. Rep., 554; 21 N. W. Rep., 567; 46 Am. Rep., 92; 78 Mo., 226.

2. As to appellee's right to recover and the amount, see 43 Am. Dec., 204 and note; 7 Fed. Rep., 641; 19 Fed. Rep., 59; 65 Mo., 549.

3. The contract was binding. 33 Iowa, 105; 74 Am. Dec., 309; 7 N. W. Rep., 840; 28 N. W. Rep., 105.

4. The board had no authority to discharge a teacher holding a license, and afterwards attack such a teacher's qualifications collaterally in a defense to an action for damages against the district. Mansf. Dig., secs. 6187-8; 27 N. W. Rep., 728; 37 N. W. Rep., 567.

HEMINGWAY, J.    The errors alleged as ground for reversal and urged in the argument are, first, that the court below improperly excluded evidence offered by the appellant, and second, that it erred in its charge to the jury.

1. School board —Authority to dismiss teacher.

1. The appellant offered evidence tending to prove that the appellee was incompetent as a teacher and was addicted to immoral habits and conduct during the time he taught.

The court ruled that no evidence so tending would be admitted, for the reason that the license to teach, issued by the county examiner, was conclusive as to the morality and competency of the teacher, and that no question could be made as to either except on a re-examination by the examiner.

It is true that the examiner may summon a teacher for re-examination, and may revoke his license to teach for immorality or incompetency, or "for any other adequate cause." When the license is thus revoked, the authority of the teacher to teach in the public schools of the county ends, and he is compelled to terminate his contract. Mansf. Dig., sec. 6187. But is this general authority of the examiner exclusive of a limited authority in the board of directors? Or may each board declare contracts with it forfeited for breach thereof?

It is the duty of the board of directors, expressly enjoined by statute, to hire suitable teachers (Mansf. Dig., sec. 6265); to establish an adequate number of schools; to keep them in operation; to enforce all necessary rules and regulations for the government of teachers and pupils; and to visit at least twice in each year each school, and observe the discipline, mode of teaching and progress of pupils. Mansf. Dig., sec. 6266. The duty to hire teachers is not discharged by the hiring of immoral or incompetent persons, although they may have obtained a license to teach from the examiner. While the board of directors can not go outside of those having license to secure teachers, it should not hire unknown persons, without making inquiry as to their morality and competency, simply because of the license. The duty to establish and keep in operation schools is not met by the employment of teachers and keeping them at a school house; but it demands that suitable persons shall be kept as teachers, and a school maintained adapted to the intellectual and moral advancement of pupils. The duty to visit the schools and observe the discipline, mode of teaching and progress of pupils is not met by visits and observations which merely notes disorder,

bad instruction and lack of progress. But the duty to discover defects is enjoined in order that they may be corrected, and the duty implies the power to correct. If the defect arises from the failure of the teacher to carry out his undertakings, the keeping of the school in the way that the law contemplates demands that he be required to comply with his contract. This contract necessarily implies that he is competent to teach properly, and that he will conduct himself in a moral and skillful manner in discharging his undertakings. If he can not or will not do either, he violates the contract, and its termination comes through his breach. We do not mean to say that every act of immorality would be a breach of the contract to justify its termination; but it would be such whenever, from the character or notoriety of the act, it impaired the services of the teacher in properly instructing or advancing the pupils. A teacher might properly instruct, yet his character for morality be so notoriously bad that he would lose the respect of his pupils and fail to advance them. He would not then be a competent teacher, though there were no defect in his learning or facility to impart it.

An examination of the legislation discloses that boards are invested with large discretion in many matters specifically mentioned, directly affecting the welfare of the schools; this is true to such an extent that the prosperity of each school depends upon the attention, efficiency and fidelity of its directors. It is unreasonable to believe that from a board thus charged with the welfare of the school would be withheld the power to remove a teacher, when he either could not or would not properly do his duty. The members of the board are as a rule most interested in proper maintenance and conduct of the schools; they live near it, are the first to learn of a teacher's delinquency, and can easiest and earliest ascertain its character and extent. If dismissal is necessary, the power to direct it should be exercised speedily, and the vacancy promptly supplied. It cannot be inferred that the leg-

islature intended to give the exclusive power to an officer at a remote place whose action would be necessarily subject to delay, and withhold it from local authorities who can act promptly, and are most interested in prompt and efficient action.

We do not think that most of the cases cited by the appellee favor his contention. In the case of *Arnold v. School District*, 78 Mo., 226, it was held that the school board could not dismiss a teacher who had knocked down a pupil with a billet of wood, had stamped another, and had been given to violent outbursts of passion in the conduct of the school during which he had cursed and abused pupils. That ruling was influenced by the history of legislation upon the subject in that State, a reason which does not apply with us. But, while we hold that court in high esteem, we cannot agree with its conclusion in that case.

In the case of *McCutchen v. Windsor*, 55 Mo., 149, the court ruled under a statute much similar to ours, that the power to remove was in the board. Judge Wagner, speaking for the court, says, that "cases might undoubtedly occur when the teacher was shown to be palpably deficient, grossly immoral, or unquestionably unfit, which would justify and warrant the directors in removing him. But this would rather amount to a breach or violation of the contract on his part than on theirs." This view meets our approval, and we think the court below erred in excluding the evidence offered.

2. The court charged the jury as follows: "The court instructs the jury that if they find that plaintiff did commit any substantial breaches of his contract as above explained, and such breaches were reported or became known to the board of directors, and they continued to accept his services after such knowledge without reasonable cause for delay in discharging him, you are authorized to presume that they waived such breaches; and if you find such waivers, then they can not rely upon them afterwards to justify a discharge; or if

2. Teacher's contract— Waiver of breaches in by school board.

the board investigated any alleged breaches and refused to discharge therefor, they can not afterwards rely upon such breaches to justify a discharge.''

What was within the contemplation of the court as substantial breaches of contract, which the board might waive, is not clear. That it might waive a compliance with certain kinds of regulations adopted by it for the guidance of teachers is probable; but the undertaking of the teacher that he will properly deport himself and discharge his duty in a moral and skillful manner is assumed for the benefit of the school, its pupils and patrons. The board is bound to see that the duty is observed by the teacher, and this obligation of the board is one that it may not waive or renounce. It should be guilty of no delay, but if it tolerates misconduct or inefficiency for a time, this can not avail the teacher so long as it impairs his services or prejudices the welfare of the school.

Other matters have been referred to by counsel but passed without argument. We have not considered them. The opinion sets out all that the court decides. For the two errors indicated, the judgment will be reversed, and the cause remanded.