## HOWARD S. FREEMAN *vs.* INHABITANTS OF BOURNE.

Barnstable.   October 25, 1897. — February 24, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Union of Towns for Employment of Superintendent of Schools — Power of Dismissal — Authority of Committee — Sufficient Cause of Dismissal.*

Where several towns unite for the purpose of the employment of a superintendent of schools, under the authority of a statute which provides that the school committees of the towns comprising the union shall form a joint committee, which shall be the agents of each of the towns, such committee has the power of dismissing a superintendent, if the power of dismissal exists.

The tenure of a superintendent of schools, chosen by a joint committee formed by the school committees of towns uniting for the purpose of the employment of a superintendent of schools under statutory authority, depends upon the terms of his employment, and by construction the contract of his employment is deemed to be for a year, unless there is something to show that it is for a less term; but in the selection and employment of such an officer there is an implied condition which authorizes his dismissal, if circumstances arise which render him no longer able or fit to perform the duties of his position.

The pendency of an indictment for adultery against a superintendent of schools, chosen by a joint committee formed by the school committees of towns uniting for the purpose of the employment of a superintendent under statutory authority, and a verdict of guilty thereon, warrant the committee in declaring his office vacant, and in choosing his successor.

CONTRACT, for services rendered by the plaintiff as superintendent of schools in the district which included the defendant town.    The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon agreed facts, in substance as follows.

Under St. 1892, c. 344, the towns of Sandwich, Bourne, and Mashpee were empowered to unite for the purpose of the employment of a superintendent of schools, in accordance with the provisions of St. 1888, c. 431, and were granted the right to receive an allowance from the State treasury for such purpose. The towns, by meetings regularly called and duly held for the purpose, severally adopted the provisions of St. 1892.

In compliance with the terms of the statutes, the joint committee of the towns became duly organized and held a special meeting on August 12, 1893, at which the committee chose by ballot Delbert G. Donnocker to be superintendent of schools of the three towns, to fill a vacancy caused by the resignation of a former superintendent, who had been elected on April 29, and resigned on July 27, 1893.    Donnocker accepted the position, and entered upon the performance of his duties as such superintendent.

On the first Tuesday of September, 1893, in the Superior Court, County of Cumberland, and State of Maine, Donnocker was indicted for the crime of adultery.    He was thereupon duly tried by a jury before that court, after a plea of not guilty, and on the twenty-eighth day of the term a verdict of guilty was returned.    Exceptions filed by him were sustained by the Supreme Court, and a new trial was granted.    The case was again tried in the Superior Court on the fourteenth day of the September term, 1894, and resulted in a disagreement of the jury.    The case was tried a third time on the sixteenth day of the January term, 1895, and again resulted in a disagreement of the jury; and on the thirty-seventh day of the last mentioned term a *nolle prosequi* was entered in the case.

The charges alleged in the criminal action were known to the inhabitants of the defendant town and to the members of the joint committee very soon after, and to a special committee of the joint committee appointed to investigate the fitness of candidates before the election of Donnocker to the position of super-

intendent of schools. There was no other reason for discharging him from the position of superintendent of schools than the fact of the existence of the charges contained in said indictment, and the trials thereupon.

On October 2, 1893, at a special meeting of the joint committee, duly held, " the office of superintendent was declared vacant by a vote of nine in the affirmative; none in the negative." The school committee of the defendant town protested against the legality of the meeting and its action, and thereupon declined to take part in the same. This meeting was then adjourned for one week, and at the adjourned meeting, duly held on October 9, 1893, the joint committee regularly chose by ballot the plaintiff to be superintendent of schools for the three towns " for the term of ten months at a salary of fifteen hundred dollars per annum." The school committee of the defendant town protested against such action.

On October 28, 1893, a special meeting of the joint committee was duly held, and, on vote by ballot, the school committee of the defendant town non-concurring and protesting, " the action of the meeting of October 2, 1893, by which the office of superintendent of schools of this district was declared vacant," and also the action of the meeting of October 9, 1893, by which the plaintiff was elected superintendent, were duly ratified; and thereupon the plaintiff accepted the position, and entered upon the performance of his duties.

The defendant town and its school committee denied at all times the right of the joint committee to dismiss Donnocker, so far as the defendant was concerned, in the manner and for the causes above stated, and, deeming that no sufficient cause existed for dismissing him, retained and employed him as its superintendent of schools from the time of the election of the plaintiff until June 15, 1894, and duly paid him therefor at the rate duly apportioned by the joint committee as the share of the defendant town to be paid to the joint superintendent of schools.

The defendant town and its school committee, for the reasons above set forth, declined to receive any services during that period from the plaintiff, although the same were duly tendered by him.

On April 23, 1894, the annual meeting of the joint committee

was duly held, and, on vote by ballot, the plaintiff was regularly elected superintendent of schools to take effect from June 15, 1894. Assenting to this election, the defendant, after June 15, 1894, duly paid its proportionate share of the salary of the joint superintendent of schools to the plaintiff, and has received the benefit of his services.

The plaintiff has received no compensation from the defendant for services from November 7, 1893, to June 15, 1894, and has demanded pay for the same, which he was always ready and willing to perform.

*C. F. Chamberlayne*, for the defendant.

*A. S. Hayes*, for the plaintiff.

ALLEN, J. The plaintiff's right to recover is denied by the defendant on the following grounds.

1. That if the power to dismiss a superintendent of schools existed, it was not in the joint committee but in the municipality; that the joint committee, after the annual convention, had no authority except to do the things which were necessary in order to secure the contribution of money from the Commonwealth; and that, after that, the relations of the superintendent were directly with the town.

2. That there is, indeed, no power anywhere to dismiss a superintendent.

3. That the superintendent could only be dismissed for cause, and that no sufficient or legal cause of dismissal is disclosed.

We will consider these objections in their order.

By virtue of St. 1892, c. 344, the towns of Sandwich, Bourne, and Mashpee united for the purpose of the employment of a superintendent of schools, in accordance with the provisions of St. 1888, c. 431, which authorized certain small towns to unite for this purpose, and to obtain a contribution from the Commonwealth. Before these statutes were passed, two or more towns were authorized to form a district for this purpose, but without any provision for obtaining money from the Commonwealth. Pub. Sts. c. 44, §§ 44, 45. It is expressly provided by St. 1888, c. 431, § 2, that, " when such a union has been effected, the school committees of the towns comprising the union shall form a joint committee, and for the purposes of this act said joint committee shall be held to be the agents of each town comprising the

union." They are to meet annually in joint convention, in the month of April, and. choose a superintendent of schools, determine the relative amount of service to be performed by him in each town, fix his salary, and apportion the amount thereof to be paid by the several towns. The scheme necessarily implies that a superintendent can be employed or discharged only by the joint committee. The union is formed for the purpose of securing better service than the towns acting separately could obtain. For the purposes of the statute, the joint committee become the agents of each town, and their acts within the scope of their authority are binding upon each town. Separate action by the school committee of a single town would defeat the purposes of the union. It follows from this that the authority of the joint committee does not cease with obtaining the contribution from the Commonwealth. That contribution contemplates the maintaining of a superintendent of schools for an entire year. Suppose the superintendent chosen in April dies shortly afterwards, or resigns, or goes away, or becomes insane, or otherwise totally incapacitated, so that there is no performance or attempt at performance of the duties of the position. Some one must be appointed in his place, or else the money of the Commonwealth will have been obtained on a consideration which has failed. In such case, it is quite clear that the joint committee must act to fill the vacancy. Donnocker himself was chosen in this manner to fill a vacancy. The school committees of the towns cannot act separately. Whatever action is taken in respect to the employment of a superintendent must be by the joint committee ; and if there is any power of dismissal it rests with the same body. *Ex parte Hennen*, 13 Pet. 230.

We come then to the questions whether there is any power to dismiss a superintendent of schools so chosen, and whether a sufficient and legal cause of dismissal in this case is disclosed. We may assume at the outset that the choice was for one year. *Chase* v. *Lowell*, 7 Gray, 33. *Kimball* v. *Salem*, 111 Mass. 87. Nevertheless, the tenure of an officer so chosen or employed is not like that of an officer whose term of office is fixed by law. His tenure depends upon the terms of his employment, and by construction the contract of his employment is deemed to be for a year, unless there is something to show that it is for a less

term. But in the selection and employment of an officer of this character there is an implied condition which authorizes his dismissal, if circumstances arise which render him no longer able or fit to perform the duties of his position. The case of total incapacity has already been referred to. But there may be reasons not amounting to total incapacity which nevertheless furnish a practical disqualification, such, for example, as gross and habitual neglect of duty, or habitual intoxication. The power to dismiss officers who are employed for fixed terms, in case of misbehavior or other supervening unfitness, was recognized in *Chase* v. *Lowell*, 7 Gray, 33, and it has always been held to exist in the case of clergymen settled for life. *Avery* v. *Tyringham*, 3 Mass. 160, 177. *Thompson* v. *Rehoboth Catholic Congregational Society*, 5 Pick. 469. *Peckham* v. *Haverhill*, 16 Pick. 274, 288. *Sheldon* v. *Easton Congregational Parish*, 24 Pick. 281, 286–288.

In the present case, the superintendent who had been chosen by the joint committee was afterwards indicted in Maine for adultery. The indictment was returned at a term beginning on the first Tuesday of September, 1893, which was on September 5, and on October 3 of the same year a verdict of guilty was returned upon his trial. This verdict was afterwards set aside, for some reason not shown in the agreed statement of facts, and at two subsequent trials the jury disagreed. A *nolle prosequi* was afterwards entered. The votes of the joint committee declaring the office of superintendent vacant, and choosing his successor, were on October 2 and 9, 1893. A subsequent vote of ratification of the above votes was passed on October 28 of the same year. The existence of this charge against the superintendent was known to the joint committee, and it is agreed that there was no other reason for discharging him from the position of superintendent of schools than the fact of the existence of the charges contained in said indictment, and the trials thereupon. A comparison of the above dates shows that the first vote of the joint committee was on October 2, and that the verdict in the first trial was on October 3. There can, however, be no doubt that the existence of the indictment alone would at least put him under just suspicion of having committed the offence therein charged. The joint committee did not act upon mere rumors more or less current in the community. Schools will suffer if

those who conduct them are open to general and well grounded suspicion of this kind. It needs no extended argument to show that not merely good character, but good reputation, is essential to the greatest usefulness in such a position as that of superintendent of schools. In *Chaddock* v. *Briggs*, 13 Mass. 248, 254, it is said in respect to a clergyman, " Even a reputation for immorality, although not supported by full proof, might in some cases be a sufficient ground for removal." Where a superintendent of schools is under indictment for adultery, it is competent for the joint committee to declare that he has become unsuitable and unfit to continue in that position, without assuming for themselves to determine the question of his guilt or innocence. They are not bound to form a judgment upon that matter. That question is in the hands of the courts, and the determination of it by a final conviction or acquittal may be long postponed, and indeed, as in the present case, may never be reached. The pendency of the indictment, and especially the verdict of guilty before their final votes, were sufficient to warrant them in declaring his office vacant, and in choosing his successor.

No question is raised as to the regularity of their proceedings in matter of form.        *Judgment for the plaintiff affirmed.*