# DURST v. SCHOOL DIST. No. 2 OF NIOBRARA COUNTY

## COUNTY

(No. 1499; Jan. 17, 1929; 273 Pac. 675)

*Thomas M. Fagan* of Lusk, for appellant.

*Edwin L. Brown,* for respondent.

BLUME, Chief Justice.

This action was brought by Cecile Durst against School District No. 2 of Niobrara County, Wyoming, to recover damages for her wrongful discharge as teacher in defendant district. The District Court found in favor of the plaintiff in the sum of $40.50, being the amount due her up to the time of the institution of the suit herein. Subsequently, however, and on November 28, 1927, the court, convinced that an error had been made, granted a new trial and the appeal herein is from that order. The parties will be referred to herein as in the court below.

It appears that the school district above mentioned, on April 19, 1926, employed plaintiff to teach mathematics and science in the High School of Manville, Wyoming, for nine months, beginning on the first Monday of September, 1926. At the time last mentioned plaintiff entered upon the performance of her duties and taught until the 22nd day of December, 1926, when a recess was taken for the Christmas holidays. Plaintiff went to Boulder, Colorado, during this time,

and while there received a letter from Mr. DeHoff, superintendent of the schools at Manville, dated December 29, 1926, stating that it had been decided at a meeting of the school board that plaintiff's work was too hard and difficult for her, and that it would be better for her as well as the district to make a change, and that her position had been declared vacant. Plaintiff, however, paid no attention to this letter, but returned to Manville on the expiration of Christmas vacation, on January 3, 1927, and taught during that day. On the same day, however, she received a letter signed by all the members of the Board of Trustees of defendant district stating as follows, leaving out the address, date and signatures:

"Inasmuch as you have been notified that your place was declared vacant by this board for full and sufficient reason and you have persisted in coming back, we are sending you this second notice and include with it the salary up to and including the 15 days stipulated in the contract, and we insist that your services as teacher in the high school is not desired any longer after service of this notice."

This notice was given to her by one of the members of the board of trustees, who said to plaintiff, "I wish you would observe that, please." Plaintiff attempted to get a meeting of the board of trustees thereafter but failed. Thereupon, and on January 11, 1927, she commenced this action, which was not, however, tried until August 1, 1927, after the time agreed upon in the contract had expired. The amount allowed by the court was, as already stated, the balance of the amount due under the contract up to the time of the institution of the suit herein.

The only testimony introduced was on behalf of the plaintiff, from which it appears that she was at all times ready to perform her part of the contract and that she was efficient and successful in her work and that no complaint had ever been made to her up to the time that she received the letter of December 29, 1926.

1. The plaintiff, in addition to other damages, also claimed damages in the sum of $5000 for injury to her business reputation and $1000 for mental suffering by reason of her wrongful discharge. That no recovery, however, can be had for these items is clear. 39 C. J. 112.

2. Counsel for the defendant maintains that the court should not have granted a new trial, because the plaintiff is not entitled to recover in any amount whatever. His theory is that the action of the board of trustees was illegal; that plaintiff should not have conformed to the unlawful request made by the board to cease from teaching, and that when she did so it was equivalent to a voluntary resignation; that the unlawful action of the board is not binding upon the district and cannot make it liable, but that the only liability that could exist, if any, would be on the part of the individual members of the board. See Wood v. District No. 13 (Mo. App.) 7 S. W. (2nd) 1018. The claim that the board had no right whatever to discharge the plaintiff in the manner hereinbefore stated is based upon the provisions of Section 1557, Wyo. C. S. 1920, reading as follows:

"He (the county superintendent) shall have the general superintendence of the schools of his county, and shall visit each school at least once each term, and shall have power to recommend for dismissal all teachers he may find to be incompetent; provided, that before any teachers shall be dismissed it shall be the duty of the superintendent to specify charges, in writing, against said teacher, and shall file the same with the board of trustees of the school district wherein said teacher is employed, and upon such charges a hearing shall be had in the presence of the board, and if in their judgment the charges as preferred are well sustained, then the said board may proceed to dismiss said teacher."

Counsel for the defendant claims that plaintiff could not be discharged except in the manner stated in these provisions. But the section quoted attempts to define and limit the duties of the county superintendent of schools in

connection with the discharge of teachers, and does not attempt to define or limit the duties and powers of the boards of trustees of school districts at times other than when charges are filed by the county superintendent. The primary duties to look after the school districts devolve upon the boards of trustees; the duties of a county superintendent are secondary, and supervisory in character. At least all the larger cities and towns in the state employ a superintendent to look after the interests of the schools in the city or town, who is in constant touch with the affairs therein, and whose duties it is, among other things, to see that teachers perform their duties faithfully and efficiently. The county superintendent cannot, ordinarily at least, be as conversant with the affairs of the schools in a town or city as the superintendent who is primarily employed for that purpose, and we should be reluctant to hold that a board of trustees in such school districts has no power whatever to discharge any teacher until and unless charges in writing have been preferred as provided in the section of the statutes above quoted. Unless a county superintendent were familiar with the situation, he would naturally hesitate to file any such charges, and the result would be, if the claim of counsel for the defendant here is correct, that a city or town might be compelled to keep a teacher who might be wholly inefficient, disorderly and even disgraceful in conduct, for many months without being able to discharge him or her. We do not think that any such result as that was contemplated by the legislature in the enactment above mentioned. And that fact is, we think, clear when we consider the legislative history of that section. Ch. 44 of the Session Laws of 1895 was an act relating to the duties of county superintendents of schools and provided, among other things, that:

"He shall have the general superintendence of the schools of his county and shall visit each school at least once each term, and shall have power to dismiss all teachers he may find to be incompetent."

This provision, giving plenary power of discharge, was embodied in Section 1196, Rev. St. of Wyo. 1899, and remained the law until the legislature met in 1901, when, by Ch. 56, Session Laws of 1901, the provision last above quoted was amended so as to read as follows:

"He shall have the general superintendence of the schools in his county and shall visit each school at least once each term, and shall have power to recommend for dismissal all teachers he may find to be incompetent, provided," etc.,

the proviso being the same as appears in Section 1557 Comp. Stat. 1920 already hereinbefore quoted. It is clear, therefore, that these provisions were intended to relate merely to the supervisory power of the county superintendent and that the amendment of 1901 was adopted for the specific purpose of limiting his power of discharge, which had previously been unlimited, and these laws were not, as already stated, intended to limit the primary duties of boards of trustees of school districts and did not, we think, pretend to regulate or define them. We accordingly think that Section 1557, supra, has no application in the case at bar.

The various boards of school districts in the state have general charge of the interests of the respective districts. We have no statute, aside from that already quoted, giving them any direct power to dismiss teachers. Section 2259, Wyo. C. S. 1920, provides that "The district board shall employ all teachers necessary for the schools of the district and pay them by draft on the treasurer." Section 2412, relating to High School districts, provides that the trustees shall employ some suitable person as principal thereof, and that the trustees shall furnish assistant teachers as they may deem necessary and designate the salaries to be paid to such principals and assistant teachers. We think that, in the absence of constitutional or statutory limitations, as is true in this state, the right to hire teachers presupposes

and implies the right to dismiss them. This is held by a number of authorities. 24 R. C. L., page 618; Loehr v. Board, 12 Cal. App. 671, 108 Pac. 325 and cases cited; Freeman v. Town, 170 Mass. 289, 49 N. E. 435, 39 L. R. A. 510; McCutcheon v. Windsor, 55 Mo. 149; City v. Hays, 42 Ind. 200; Bays v. State, 6 Nebr. 167; Eastman v. District, 21 Ia. 590; Tripp v. School District, 50 Wis. 651, 7 N. W. 840. In City v. Hays, supra, the court said as follows:

"It does not follow that, because the school trustees in incorporated towns and cities are not authorized by statute to dismiss teachers, they have no power or authority to do so, when there is any valid reason for such dismissal. The relation of teacher and pupil is one of the utmost importance to the well-being of that generation which is soon to take the place of the present in the active duties of life; and too much care and discrimination cannot well be taken in the selection of those who, as teachers in our common schools, are, in a great degree, to mould the moral and intellectual qualities of those whose rudimentary culture is placed under their charge. A teacher, doubtless, like a lawyer, surgeon, or physician, when he undertakes an employment impliedly agrees that he will bestow upon the service a reasonable degree of learning, skill, and care. When he accepts an employment as teacher in any given school, he agrees, by implication, that he has the learning necessary to enable him to teach the branches that are to be taught therein, as well as that he has the capacity, in a reasonable degree, of imparting that learning to others. He agrees, also, that he will exercise a reasonable degree of care and diligence in the advancement of his pupils in their studies, in preserving harmony, order, and discipline in the school; and that he will himself conform, as near as may be, to such reasonable rules and regulations as may be established by competent authority for the government of the school. He also agrees, as we think, by a necessary implication, that while he continues in such employment, his moral conduct shall be in all respects exemplary and beyond just reproach. Now, if a teacher, although he has been employed for a definite length of time, proves to be incompetent, and unable to teach the branches of instruction he has been employed

to teach, either from a lack of learning, or from an utter want of capacity to impart his learning to others; or if, in any other respect, he fails to perform the obligations resting upon him as such teacher, whether arising from the express terms of his contract or by necessary implication, he has broken the agreement on his part, and the trustees are clearly authorized to dismiss him from such employment.''

In Bays v. State, supra, the court said, among other things, as follows:

''The authority to terminate the employment of a teacher must rest somewhere, and in the absence of an express provision on this subject it should, we think, be governed by the general rule of the common law applicable in analogous cases, and be held to reside with those whose duty it is to represent the district in making the contract, and who are also directly responsible for the successful management of the school. By the common law, if a servant neglects the duties of his employment, or is incompetent to perform them with reasonable skill, he may be discharged at once, although hired for a definite time which has not yet elapsed. And when a servant is formally discharged, even although it be without adequate cause, he cannot continue the service against the will of his employer, but must seek redress by an action for damages.''

We think, however, further, that in the absence at least of a contract to the contrary, the board of trustees cannot act arbitrarily in the discharge of a teacher who has been employed for a definite period of time, prior to the expiration of that term, but must have reasonable cause therefor. School District v. Gautier, 13 Okla. 194, 73 Pac. 954; Brown v. School District, 1 Kans. App. 530, 40 Pac. 826; Taylor v. School District, 15 Ariz. 262, 138 Pac. 13; Campbell v. Warrick, 142 Miss. 510, 107 So. 657; Gardner v. School District, 161 Ark. 466, 257 S. W. 73; Urie v. School District, 86 Okla. 265, 208 Pac. 210; State ex rel. v. Preston, 120 Wash. 569, 208 Pac. 47; Wallace v.

School District, 50 Nebr. 171, 69 N. W. 772. In fact the contract in the case at bar provides that the plaintiff might be discharged for reasonable cause, and we see no reason for the invalidity of that provision in the contract. See School District v. Gautier, supra, and cases there cited. It is clear, therefore, that in the case at bar the defendant district, having a right to discharge plaintiff, is liable to her for the damages sustained by her, if, in fact, she was not discharged for a reasonable cause.

3. Counsel for the defendant further argues that the court erred in granting a new trial herein, because the plaintiff could in no event recover herein any amount greater than that which the court allowed, for the reason that she could not recover more than the amount actually due up to the time of the institution of the suit, and that no damages sustained subsequent to the commencement of the action are recoverable herein, particularly in view of the fact that plaintiff filed no supplemental petition. In this connection it must be borne in mind that the cause was tried after the expiration of the term stated in the contract in question. Courts are not unanimous in declaring the rule as to the damages recoverable in a suit which is brought before the expiration of the term of employment. Three different rules obtain, all of which are discussed at length in 1 LaBatt's Master & Servant, 2nd Ed., Sec. 363. The rule maintained by some, and perhaps the majority of courts, is to the effect that all damages sustained by the plaintiff may be recovered in the action, notwithstanding the fact that such action is brought and tried prior to the expiration of the term of employment. See, in this connection, Granow v. Adler, 24 Ariz. 53, 206 Pac. 590; Hart v. School District, (So. Dak.) 220 N. W. 869. A number of courts, on the other hand, hold that all the damages in respect to the period preceding the trial may be recovered, but no damages that might accrue subsequent thereto, on account of the dif-

452

ficulty of measuring them. Still a third doctrine is held, which is the one sought to be upheld by counsel for the defendant herein, and which is stated by LaBatt, supra, as follows:

"The doctrine embodied in a few cases is that no damages are recoverable except in respect to the period which had already elapsed when the action was commenced. But the preponderance of authority is so decidedly against this doctrine that it may safely be treated as erroneous except in the jurisdictions in which it has been explicitly adopted."

We think the author is correct in this statement. Counsel have cited us to Dunn v. Hereford, 1 Wyo. 206, but that case is in no way inconsistent with our holding herein. Inasmuch as this action was tried after the expiration of the term of employment herein, it is unnecessary to decide between the first two rules on this subject, above mentioned. It is clear, therefore, that the court was right in granting a new trial, and that the plaintiff, if not discharged for a reasonable cause, is entitled to recover a greater amount than she recovered in the first trial, unless evidence should be introduced in the case showing the contrary. There was no evidence of that character in the last trial. On the contrary, it appeared that the plaintiff made a reasonable effort to find other employment after his discharge by the defendant, but that she was unable to do so.

4. Counsel for the defendant raises some contention in regard to the pleadings in this case, stating that if plaintiff was discharged "it was incumbent upon her to allege competency, fitness and readiness to perform at the time of a legal discharge," and he claims that this does not appear in the amended petition. That plaintiff was a professional teacher and had the requisite certificate from this state is not questioned and is abundantly

shown in the evidence herein. Plaintiff alleged among other things that she was duly qualified to teach in both grade and high schools in the state of Wyoming, that she had a college education, that she commenced her work as a teacher in the High School in Manville "and so continued successfully, faithfully and without any criticism of her qualifications, methods, or either, until on or about the 22nd day of December, A. D. 1926;" that plaintiff returned to Manville with a view to meeting the conditions of her contract and taught on January 3, 1927, but that her contract was unlawfully terminated the following day. We are somewhat at a loss to know upon what reason the objections raised by counsel are based, for they are not pointed out in the brief, and in the absence of further information, it would seem that these allegations, taken together, meet the objections of counsel stated above, and should be held sufficient, at least in the absence of a motion for a more specific statement. Readiness to perform, we think, sufficiently appears. The objection to the lack of allegation that plaintiff taught the school "efficiently" is not, we think, well taken. If it was necessary at all for plaintiff to allege the manner in which she taught the school, we think that the term "successfully" which was employed in her petition might fairly be construed to include the term "efficiently."

It follows, we think, that the court did not err in granting a new trial herein, and the order appealed from should be and is accordingly affirmed.

*Affirmed.*

KIMBALL and RINER, JJ., concur.