CLAUDE R. TRACY,

Plaintiff and Appellant,

vs.

SCHOOL DISTRICT NO. 22, IN THE COUNTY OF
SHERIDAN AND STATE OF WYOMING,

Defendant and Respondent.

(No. 2538; May 13, 1952; 243 Pac. (2d) 932)

2

For the plaintiff and appellant the cause was submitted upon the brief of R. G. Diefenderfer of Sheridan, Wyoming.

For the defendant and respondent the cause was submitted upon the brief and also oral argument of Henry A. Burgess, of Sheridan, Wyoming.

## OPINION

RINER, Justice.

This action was brought by the plaintiff, Claude R. Tracy to recover the balance claimed to be due him as a

teacher in the public schools of Clearmont, from Sheridan County School District No. 22, in the State of Wyoming. That School District was designated as the defending party. The plaintiff hereinafter will usually be referred to so—or by his surname. The defendant school district for convenience and brevity will also usually be mentioned as the defendant or respondent as it is designated on this appeal.

Plaintiff's amended petition after alleging that "at all times hereinafter mentioned" the defendant was a school district duly organized and existing under the laws of this State and that the plaintiff was, and still is, a duly qualified public school teacher in the said State and a holder of a school certificate therein authorizing him to teach in the high school of said defendant at Clearmont, Wyoming, which certificate "has never been annulled and is still in full force and effect," avers as follows:

"II

"That, on or about the 23rd day of March, 1950, the defendant district made and entered into, with the plaintiff, a contract in writing, in words and figures as follows, to-wit:

'TEACHERS CONTRACT
Clearmont Public Schools
School District No. 22
Sheridan County
Clearmont, Wyoming

This Agreement entered into this 23rd day of March, 1950 between School District No. 22, Sheridan County, Wyoming and Claude R. Tracy a qualified teacher of said County and State.

Witnesseth: that the said Claude R. Tracy agrees to teach in the Clearmont Public Schools, in a faithful and efficient manner for the term of nine months commencing on the 5th day of September 1950 and that he agrees to keep himself, herself, qualified and to observe

the rules and regulations of the Board of Education of said District, and of the Superintendent of the Clearmont Public Schools. Said Claude R. Tracy agrees to teach the subjects and grades assigned by the Board of Education and the Superintendent of the Clearmont Public Schools—due consideration being given to the qualifications of said teacher.

In consideration thereof; the said School District No. 22 agrees to pay, said Claude R. Tracy the sum of $3,000 (Three thousand and no/100 Dollars) per school year for said services. Payments to be made in nine monthly payments. If Mr. Tracy and the team places first at the District Tournament, said Mr. Tracy will receive $50 in addition to the regular salary.

Provided that in case the said Claude R. Tracy shall be discharged for sufficient and just cause (as prescribed by the Wyoming State School Law) by the District Board; or shall have his certificate annulled, he shall not be entitled to any compensation from and after such dismissal or annullment.

In Witness Whereof, we hereunto subscribe our names this 23rd day of March 1950.

C. R. Tracy,
Teacher.

Mae Chase Huson
Clerk

Bryant H. Ellis
Director

Arthur Roebling
Treasurer.'

"III

"That, in accordance therewith, the plaintiff commenced to teach in the said High School in defendant district at the opening of the term which began on or about September 5, 1950, and continued to do so in all respects as provided in said Contract until he was discharged by the defendant, acting by and through its Board of Trustees, on April 2, 1951, under the following

circumstances, to-wit: On or about March 27, 1951, he received from the School Board of the defendant, through registered mail, a letter personally signed by each of the Trustees of the defendant district, a true copy of which letter is as follows, to-wit:

'CLEARMONT PUBLIC SCHOOLS
School District No. 22
Sheridan County
CLEARMONT, WYOMING

March 27, 1951

Mr. Claude Russell Tracy
Clearmont
Wyoming

Dear Mr. Tracy,

It is with regret that we have come to this decision. Due to the happenings of the last few days, especially the drinking within the boundry (boundary) of the Schoolhouse and also offering such to the students, we feel that we are justified in our decision. You know, Mr. Tracy, as well as we do that this is very bad and absolutely cannot be allowed.

Don't you think, yourself, the best thing for you and the School, would be for you to offer us your resignation, effective immediately.

We again assure you we are very sorry to have to do this and if you would like to meet with us and talk things over we would be very glad to do so.

Yours very truly,

SCHOOL BOARD DISTRICT NO. 22

/s/  H. D. Myers
Director

/s/  George Schuman
Treasurer

/s/  Mae Chase Huson
Clerk.'

"That this plaintiff did not meet with said Board, but continued to teach until, on April 2, 1951, he was discharged by said Board without further notice other than a letter signed by all members of said Board and delivered to plaintiff on said date, a true copy of which said letter of April 2, 1951, is as follows:

'CLEARMONT PUBLIC SCHOOLS
SHERIDAN COUNTY
CLEARMONT
WYO.

April 2, 1951

Mr. Claude Russel Tracy
Clearmont
Wyoming

Dear Mr. Tracy,

This is to notify you that your services here at school are ended, as of April 2, 1951. Therefore, will you please leave the school and stay away from the school grounds and the school.

Enclosed you will find our warrant to cover your services to date.

Yours very truly,

SCHOOL BOARD DISTRICT NO. 22

/s/ Mae Chase Huson
Clerk

/s/ H. D. Myers
Director

/s/ George Schuman
Treasurer.'

ENCL.

"IV

"That, other than the said letter dated March 27, 1951, the plaintiff received no notice of charges from said Board, of any nature, nor was he present at any hearing before said Board; that plaintiff accepted the said letter of April 2, 1951, as a notice of his discharge from his

employment under said contract and complied therewith and although he was ready, able and willing to perform his duties as a teacher under said contract, he was unable to do so by reason of such discharge; that defendant district has paid to the plaintiff, under the terms of said contract, seven monthly installments of his agreed annual compensation of $3,000.00, and an eighth installment as of April 2, 1951, for plaintiff's services up to that date, leaving due and owing to plaintiff from defendant, under said contract, a balance of $534.00, all of which the defendant refuses to pay.

"V

"That, by reason of the facts and circumstances hereinabove set out, the defendant district is indebted to the plaintiff in the sum of $534.00, with interest thereon from April 2, 1951."

The prayer of the pleading aforesaid was that plaintiff have judgment against the defendant in the sum of $534.00 with interest thereon at 7% per annum from April 2, 1951 to the judgment date together with his costs herein incurred.

To this pleading the defendant interposed a general demurrer "for the reason that said petition does not state facts sufficient to constitute a cause of action." The cause was submitted to the District Court of Sheridan County upon the amended petition and the demurrer above set forth with the result as stated in the Court's judgment form that:

"IT IS HEREBY ORDERED, that the said Demurrer be, and the same is hereby sustained, to which Order the plaintiff excepts, which exception is by the Court allowed.

"Thereupon, the plaintiff refused to plead further, and consequently:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the plaintiff take nothing by his Amended Petition, filed herein, and that the defendant have and recover of and from the plaintiff its costs herein, which

are hereby taxed at $ ___none___ , to which judgment the plaintiff excepts, which exception is allowed.

"DONE IN OPEN COURT, this 26th day of October, 1951."

This court has heretofore had two cases come before it in which the dismissal of school teachers were involved, in neither of which the controlling facts were similar to those in the case at hand. However, those cases very fully reviewed the principles which should be kept in mind in disposing of cases of this character. Those cases were: Durst v. School District No. 2 of Niobrara County, 39 Wyo. 442, 449, 450, 273 Pac. 675 and Baird v. School District No. 25, Fremont County, 41 Wyo. 451, 287 Pac. 308. In the Durst case quoting from the case of City of Crawfordsville v. Hays 42 Ind. 200, where the implied agreements of a teacher accepting employment "as a teacher in any given school" are exhaustively listed this language is set forth:

"He also agrees, as we think, by a necessary implication, that while he continues in such employment, his moral conduct shall be in all respects exemplary and beyond just reproach."

The Indiana Court then points out that if the teacher fails:

"* * * to perform the obligations resting upon him as such teacher, whether arising from the express terms of his contract or by necessary implication, he has broken the agreement on his part, and the trustees are clearly authorized to dismiss him from such employment."

A supplementary and more elaborately considered discussion of school law appears in the Baird case supra. There it is said that (p. 460):

"But the majority of the courts seem to hold that in the absence of a statute or a contract permitting removal at pleasure, principles of justice require that a hearing

should be had after notice given to the party sought to be removed. (Citing cases). And we shall assume, for the purposes of this case, that, in order to make the decision of the school board of any effect, a hearing upon notice, was necessary, * * *"

We reiterate the principle thus announced and nothing herein should be construed as announcing a contrary rule.

Quoting from the case of Kelsey vs. School District, 84 Mont. 453, 276 Pac. 26, 27, there was used in the Baird case (p. 463) this language:

" 'That the courts will not interfere with the discretion of school officials in matters which the law has conferred to their judgment, unless there is a clear abuse of that discretion, or arbitrary or unlawful action, seems to be the unanimous holding of the authorities.' State ex rel. Ingersoll v. Clapp, 81 Mont. 200, 263 Pac. 433."

The Montana Court then proceeds thus;

" 'It is for the board of education, within the reasonable exercise of its power and discretion, to say what is best for the successful management and conduct of the schools, and not for the courts.' * * * In respect of employing and discharging teachers we say, as was said in Peterson v. School Board, supra, (73 Mont. 442, 236 Pac. 670) 'In this, and all like questions properly coming before them, the members of the board act in a quasi-judicial capacity, and, with the proper exercise of their discretion and judgment, the courts will not interfere.' "

Interpreting the Durst case supra, in the above mentioned opinion (p. 466 in the Baird case) this was said: "* * * we held in the Durst case that the power to employ implies the power to discharge. Additional authorities are: Tadlock v. School District, 27 N. Mex. 250, 199 Pac. 1007; Wallace v. School District, 50 Nebr. 171, 175; 3 Abbott, Mun. Corp., 2430. That is true, we think, particularly in view of Section 2330, Wyo. C.S. 1920 (Section 67-103, W.C.S. 1945), which appears to

give unlimited control of school matters to the school boards, providing: 'Educational matters affecting the school district shall be under the care of the district board of school trustees.' The principle is analogous to a similar one apparently universally held, namely, that the power of appointment to an office carries with it the power to remove, unless limited or restricted, or unless the term is fixed by statute. 46 C.J. 985, 22 R.C.L. 562: That rule of law is as much a part of every contract of employment of teachers as though it were expressed or referred to therein."

It was also said in the Baird case (p. 467) touching the case last mentioned:

"According to the Durst case, removal of a teacher may be only for cause, and we may assume, as heretofore stated, that it should be only upon notice and a hearing."

Relative to removal procedure relating to a teacher under contract with a School Board the Baird case (p. 469) states:

"No provision as to the method of removing teachers, when the occasion arises, has been made by our statute. It is held that in such case the power to adopt means necessary to effectuate the power of removal is conferred as incident thereto, and in that event the removing power may adopt its own procedure." (Citing authorities.) * * *

"But proceedings of the character here in question are remedial, rather than penal; they are authorized for the good of the public service and not as punishment, and are not governed by the strict rules of court procedure."

Quoting from the Colorado case of School District v. Shuck, 49 Colo. 526, 113 Pac. 511, 513, this language was set forth: (p. 469 of the Baird case supra):

" 'While there need be no formal pleadings and trial before the board with the rules and formalities of court procedure, good cause shown means specific accusation, notice, evidence of the charge before the board in its

official capacity, and an opportunity to the teacher to be heard and refute the charge.' "

Rejecting the claim sometimes made that specific charges in writing are necessary even where the statute like ours is silent on the matter the case of People ex rel vs. Campbell 50 N. Y. Super. Ct. 82, 90, was credited with declaring: (at page 471 in the Baird case),

" 'Under this authoritative exposition of the law governing the case at bar, and there being no requirement that the information concerning the cause of the proposed removal must be in writing, it must be held that the conversation shown by the return to have preceded the service of the formal notice on May 15, 1833, conveyed sufficient information to the relator of the cause of his proposed removal and constituted a sufficient opportunity to him to make his explanation; that as no question was then and there raised in respect to the right to be represented by counsel, such right, if it existed at all, was waived.' "

This court thereafter remarked that:

"In the case at bar there was no charge in writing, and though it would, perhaps, be better to follow that course, we do not believe that to be one of the essential things necessary for a fair hearing, provided that the person sought to be removed is fully cognizant of the alleged cause for removal."

Relative to the duty of a teacher to conduct himself properly from the moral viewpoint this was also said in the Baird case at page 472:

"It was said in City of Crawfordsville v. Hays, 42 Ind. 200, that a teacher agrees 'by necessary implication, that while he continues in such employment, his moral conduct, shall be in all respects exemplary and beyond just reproach.' And not merely good character, but also a good reputation is essential to the greatest usefulness in such a position Freeman v. Bourne, 170 Mass. 289, 49 N.E. 435, 39 L.R.A. 510. Entrusted as the teacher is with the education of the young, it becomes of primary

importance that the principles of right living be by him instilled into them by his example and by his conduct."

Supporting the position thus taken, the following language was excerpted from the case of School District vs. Maury 53 Ark. 471, 14 S.W. 669 (p. 473 Baird case):
" 'This contract necessarily implies that he is competent to teach properly, and that he will conduct himself in a moral and skillful manner in discharging his undertakings. If he can not or will not do either, he violates the contract and its termination comes through his breach. We do not mean to say that every act of immorality would be a breach of the contract to justify its termination; but it would be such whenever, from the character or notoriety of the act, it impaired the services of the teacher in properly instructing or advancing the pupils. A teacher might properly instruct, yet his character for morality be so notoriously bad that he would lose the respect of his pupils and fail to advance them. He would not then be a competent teacher, though there were no defect in his learning or facility to impart it.' "

In the text, The Law and Public Education by Hamilton and Mort it is also said (page 358):

"The peculiar relationship between the teacher and his pupils is such that it is highly important that the character of the teacher be above reproach. It is well settled, therefore, that a teacher may be dismissed for immorality or misconduct. The Court of Appeals of Kentucky has said that both parents and pupils regard the teacher as an exemplar whose conduct might be followed by his pupils, and the law by necessary intendment demands that he should not engage in conduct which would invite criticism and suspicions of immorality. (Gover v. Stovall et al., 237 Ky. 172, 35 S.W. (2d) 24). Even charges of or reputation for immorality, although not supported by full proof, might in some cases, be sufficient ground for removal. Not merely good character but good reputation is essential to the greatest usefulness of the teacher in the schools."

The position of the appellant relative to the letter of the Board under date of March 27, 1951, addressed to Mr. Tracy, is thus stated in his brief:

"It does not seem to the writer that there is the slightest semblance of any notice of any kind contained in said letter, and certainly no charges against the plaintiff are set out therein. It is not stated that the plaintiff did any of the drinking complained of or that he offered to the students anything to drink. In fact, nothing whatever is said in the letter in regard to what had been drunk upon the premises or had been offered to the students, and one has to guess at what was meant. For all the letter discloses, the liquid consumed might have been Coca Cola, 7-Up, or even water."

To this statement the respondent replies as follows: "Here a teacher had been drinking in the schoolhouse, had become so saturated with alcohol as to fall into a state of senselessness in front of his class which necessitated his removal by other teachers, he was apprised that his conduct could not be allowed, and he was asked to resign, or in lieu thereof the board would give him an opportunity to be heard, and the plaintiff neither resigned nor asked to be heard. No defense to such base conduct could plaintiff offer, and even in his petition he fails to deny he was guilty thereof. The school board offered him an opportunity to meet with them and 'talk things over.' His silence after receipt of the letter of March 27 and his refusal to deny the conduct charged in that letter by any allegation of this Amended Petition speaks most eloquently of the truth of the matters therein charged. The circumstances were such as to afford him an opportunity to act and speak freely."

In Webster's New International Dictionary we find the word "drinking" given the following specific meaning "the practice of drinking intoxicating liquors to excess." In other words Tracy was charged with drunkenness in the school house of the district undoubtedly in the presence of his students. When the definition above set forth from the unabridged dictionary

is construed with the statement in the letter aforesaid that "* * * You know, Mr. Tracy, as well as we do that this is very bad and absolutely cannot be allowed" there can be little doubt that the recipient of the registered mail letter personally addressed to him knew perfectly well the character of the charges preferred against him, yet neither in his petition filed in this action nor by any communications sent to the Board of Trustees of the respondent, did he even attempt to say anything about the charge or undertake to deny its truthfulness. Let it be inquired what would be the natural reaction of a normal person, a teacher qualified to teach in the higher school grades, upon receiving such a letter which contained charges of this character— which the recipient regarded as entirely false and which could be clearly so proved. We are inclined to think that he would immediately have either sent a letter to the board denying in no uncertain terms the falsity of the charge or called each member of that body over the 'phone and after stating a denial of the truth of the charge would have forthwith said: "I shall be glad to take up your offer and meet with you and discuss the matter fully." He did neither. He simply disregarded the letter and continued teaching until finally discharged, as a teacher, in the Clearmont School.

5 C.J.S. 301 § 1540 says:

"Demurrer or exception sustained. When a demurrer or exception has been sustained it is usually held that all reasonable presumptions will be made in favor of the propriety and sufficiency of the demurrer and against the pleading demurred to, which will be construed most strongly against the pleader, particularly where he refuses to amend, in which case it will be assumed that facts justifying an amendment do not exist."

Evidently there were matters other than that intimated in the charge made against Mr. Tracy in the school board's letter aforesaid which doubtless would

have been discussed at an open hearing before the board for the letter aforesaid says: "Due to the happenings of the last few days" and then adds "especially the drinking within the boundary of the school house and offering such to the students" it would seem that the board was acting for not only the best interests of the school but also those of Tracy himself. Consequently, the board asked: "Don't you think, yourself, the best thing for you and the School, would be for you to offer us your resignation, effective immediately?" In other words the board thought that the teacher would be more free from injury in his reputation by pursuing this course than to have these matters openly discussed notwithstanding they immediately thereafter expressed a willingness to have Tracy come before them and "talk things over" with them. In short, to grant him a full hearing on the matter if he desired it.

It may be observed from what has been set forth above that respondent's brief makes some statements which are not precisely perhaps embodied in the record but it is stated in 3 C.J. 1448, 1449, Section 1610 that: "Corrections or additions to the statement in appellant's brief, suggested in respondent's brief and not disputed in a reply brief, will be taken as true, and where it is stated in appellee's brief that no claim was made in respect of certain matters in the lower court, which statement is not controverted by appellant, it must be taken as true."

We observe that in Chenowth Bros. v. Magnolia Petroleum Co., et al., at hearing sought (Tex. Civ. App.) 129 S.W. (2d) 446, 448, the court said:

" 'The uncontroverted statements in defendants' brief show that Henry G. Dannelly, plaintiffs' predecessor in title, did not own or have any interest in the lands over which the street is sought to be opened, at the time he joined in the execution of the deed above mentioned; * * *'

"Appellants neither challenged the correctness of appellees' statement in a reply, nor do they challenge its correctness at this time; their position seems to be that, the Court was without authority to accept as correct, the unchallenged statement.

"We overrule that contention . . . * * *"

The case of Horosko v. School Dist. of Mount Pleasant Tp. 335 Pa. 369, 6 Atl. (2d) 866, 868, 869, 870, where the facts were not exactly as have appeared in the case at bar but where the Supreme Court of Pennsylvania very succinctly expressed its view as to the powers granted a school board even under the Teachers' Tenure Act of that State. The appeal before the appellate court was from an order of the Superior Court, (135 Pa. Super. Ct. 102, 4 Atl. (2d) 601, 604), reversing an order of the Common Pleas Court which had affirmed the action of the school board in discharging a teacher in the public schools of the township. The State court of last resort pointed out that the only valid causes for termination of a contract held by a teacher with the school board established by the State statute were among others: "immorality, incompetency and intemperance" (24 P.S. Section 1126 (a) ).

From the opinion of the Supreme Court of Pennsylvania we take the following:

"Difficulties between this teacher and the board had been existing some time and grew out of her conduct with respect to a restaurant maintained by a man whom she married in August, 1936, during the course of the period involved. In this restaurant beer was sold and a pin-ball and a slot machine were maintained and dice were played. The restaurant was across the road and about one hundred and twenty five feet from the school. In the opinion filed by the learned trial judge, he said: " 'The evidence in the case is that (1) While Miss Horosko used and was known by the name of Evelyn Horosko she was in fact married to one William Connors and lived with him as his wife: (2) That the said

Connors was the proprietor of a lunch room and beer garden in which Evelyn Horosko acted as waitress and, on occasion, as bartender, such services being performed after school hours and during the summer vacation; (3) That in this beer garden and in the presence of several of her pupils whom she was tutoring, she (a) took an occasional drink of beer; (b) served beer to customers; (c) shook dice with customers for drinks; (d) played, and showed customers how to play a pin-ball machine on the premises. And further, that she was rated by A. H. Howell, County Superintendent of Schools, under the rating card provided by the Department of Education, as 43% competent, a rating of 50% being the "passing" or average rating.

" 'Is such a course of conduct immoral or intemperate, and does it—in connection with her scholastic and efficiency rating—amount to incompetency? *We hold it to be self evident that, under the intent and meaning of the act, immorality is not essentially confined to a deviation from sex morality; it may be such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and to elevate. Nor need intemperance be confined strictly to overindulgence in alcoholic liquors—temperance implies moderation, and a person may be intemperate in conduct without being an alcoholic addict.* And so as to incompetency; as we take it, this means under the Act incompetency as a teacher— but does this mean that competency is merely the ability to teach the 'Three R's?' (Italics supplied.)

"He concluded that it would be 'just' (the word used in clause (j) of section 1205) to affirm the action of the school board in dismissing the teacher."

Thereafter in the opinion of that court we observe it is said:

"We are not prepared to say the learned judge erred in concluding that the teacher's shaking 'dice with customers for drinks' and showing them how to play a pinball machine in the presence of school children, supported the finding of incompetency in the circumstances shown."

The opinion of the ultimate supervising court of the State concludes:

"In the circumstances, therefore, we must conclude that the order made in the Common Please was 'just'.

"The order of the Superior Court is reversed and that of the Common Pleas is reinstated."

The Supreme Court of the United States declined to review this decision upon petition for certiorari filed. (Evelyn A. Horosko, petitioner, v. The School District of the Township of Mount Pleasant et al, 308 U. S. 553, 60 SC 101, 84 L.E. 465.)

After a very exhaustive and careful review of the cases involving dismissals of teachers under statutes allow School Boards to discharge for "good cause," 22 Iowa Law Review 162-4, declares that: "most courts have considered" actions of this kind i.e. removal of teachers, by a School Board to be "an executive function subject to review only for abuse of discretion," and the commenting article in the Review reaches the conclusion that:

"In spite of the freedom given school boards by the majority of jurisdiction, sound public policy supports the handling of school problems exclusively by school committees. Schools are better managed by boards of education than be juries or courts."

See also Baird vs. School District, supra.

We think that the school boards of this commonwealth should not be hampered in their efforts to check any improper conduct on the part of teachers whom they employ to teach and to foster right ideals in the students entrusted by parents to their care for the greater part of each school day. At the same time these boards must deal fairly and justly with those teachers and when any question arises as to their fitness to present standards of proper examples for the youth

who come into their classes the teacher should be promptly given notice of any charge impugning his character along those lines and an opportunity to be heard given with the right to present all evidence in the teacher's behalf and which may tend to negative or explain any such charges against him.

In the case at bar we conclude that the district court of Sheridan County did not err in upholding the action of School District No. 22 aforesaid. An order affirming its judgment should be entered.

*Affirmed.*

BLUME, C.J., and ILSLEY, J., concur.

## ON PETITION FOR REHEARING

(August 12, 1952; 247 P2 153)

In support of the petition for rehearing there was a brief for the appellant by R. G. Diefenderfer of Sheridan, Wyoming.

## OPINION ON PETITION FOR REHEARING

RINER, Justice.

Counsel for appellant in this case has filed a petition for rehearing, being dissatisfied with the result the court reached which was an affirmance of the action of the district court of Sheridan County, Wyoming, in entering judgment against counsel's client, Claude R. Tracy, upon the latter's refusal to further plead after the court had sustained a demurrer to his amended petition.

The brief in support of the petition for a rehearing as usual reiterates statements appearing in appellant's original brief and which were duly considered by this court prior to the rendition of the opinion filed in this case, and which the petition for rehearing now attacks. It is unnecessary to review these matters again.

Complaint is made that this court disregarded its rules by holding that it was necessary for counsel to file a reply brief to dispute charges made in respondent's brief as to the conduct of Tracy in drinking intoxicating liquor to excess. It would seem that counsel has misinterpreted the purport of the original opinion herein. No such requirement was announced in that opinion. The point made by the opinion was that the charge was not denied. At the time of the oral hearing before this court, ample opportunity was afforded counsel to deny the truth of any statements in respondent's

brief which he deemed not in accord with the facts. He failed to avail himself of that opportunity. As a matter of fact even in Tracy's petition for a rehearing now before us the charge is not flatly denied. What was said in respondent's brief was merely an elaboration of the charge contained in the School Board's letter of March 27th, 1951. Tracy's amended petition itself to which the demurrer was sustained, as above stated, did not allege that the charge in the letter of the Board was untrue. This allegation could easily have been inserted in that pleading and naturally would have been if it were based on fact.

Again as to the charge in that letter quoted in the opinion heretofore filed, Tracy could also have met it by pleading further upon the demurrer being sustained, filing an amended petition which denied the truth of the allegation, gone to trial and supported his denial by proof in open court. This also he declined to do. As pointed out in the original opinion herein where a refusal to amend a pleading is made the court may assume that the facts justifying an amendment do not exist.

Counsel points out in his petition for a rehearing that there are not very many telephones in Clearmont, Wyoming, it being a small community. He does not say that no member of the Board had a telephone, or that the School building was without one, or that appellant wrote a letter to the Board wherein he denied the truth of the charge and his letter was disregarded or that he contacted the Board members personally and they refused to listen to him. He does not deny that any one of several methods of communicating his views to the Board were available and that he saw fit to adopt none of them.

If Tracy had really desired a formal hearing there can be no doubt he could easily have obtained it. His actions in and out of court disclose he did not want one.

We do not feel that an unjust result was reached in this matter by either the Board, the district court of Sheridan County, Wyoming, or this court through the opinion filed. It results from what has above been said that the petition for a rehearing should be denied and that an order to that effect should be entered.

*Petition Denied.*

BLUME, C. J. and ILSLEY, J. concur.