LAURA DUNCAN, *Appellee,* v. SCHOOL DISTRICT No. 8
OF RENO COUNTY, *Appellant.*

No. 16,751.

SYLLABUS BY THE COURT.

1. PUBLIC SCHOOLS—*Dismissal of Teacher—Procedure.* Where
the members of a school-district board meet and unanimously
agree that a teacher who has been employed and is teaching
their district school is incompetent and negligent and should
be dismissed, and two members of the board, with the knowl-
edge and consent of the third, meet with the county superin-
tendent and unanimously agree that the teacher should be
discharged, but take no formal action except that the super-
intendent directs that the members of the board return to
their homes and have a full meeting of the board and prepare
and sign a notice of dismissal and have it returned to him for
his signature, which is done, and a notice of dismissal is
signed by each member of the board and by the county super-
intendent, and such notice is served upon the teacher, such
teacher is thereby dismissed in compliance with the statute.

2. ——— *Tribunal to Determine upon Teacher's Dismissal.*
While the school-district board and the county superintendent
constitute, in a sense, a tribunal to determine whether a
teacher who has been employed and is conducting a school
should be dismissed under the provisions of section 7468 of
the General Statutes of 1909, it is not necessary that there
should be any formal organization of such tribunal; it is
sufficient if the board or a majority thereof act in conjunc-
tion with the county superintendent in such dismissal.

3. ——— *Same.* If a school-district board decides to have a
meeting with the county superintendent for the purpose of
considering the dismissal of a teacher, and two members of
the board meet with the county superintendent at a time and
place of which the third member has notice, the unanimous
decision of the two members of the board and the county
superintendent is effective, although the third member of the
board unavoidably or intentionally fails to attend such meet-
ing.

Appeal from Reno district court. Opinion filed De-
cember 10, 1910. Reversed.

*Frank L. Martin,* for the appellant.

*F. F. Prigg,* and *C. M. Williams,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: There is no question as to the sufficiency of the pleadings in the case, and the undisputed evidence shows that the board of the appellant school district entered into a written contract with the appellee by the terms of which the appellee was to teach the public school in such school district for a term of seven school months, commencing on the 9th day of September, 1907, for the sum of $45 per month. The contract was in the usual form, and was signed by two members of the board and the teacher.

The appellee entered upon her duties as such teacher and continued thereafter to teach until the 25th day of November, 1907, when she was served with a notice, signed by all the members of the school board and the county superintendent, to close the school, and that she was dismissed on charges of incompetency and negligence, and the schoolhouse was closed against her. She was paid full wages, according to the terms of the contract, for the time she taught the school. After the full expiration of the term for which she was employed she brought this action to recover the amount of the wages unpaid, at the rate prescribed in the contract. A trial was had to the court and a jury, and a verdict was returned in favor of the teacher for the full amount claimed. A motion for a new trial was denied, and judgment was rendered accordingly. There is no conflicting evidence in the case.

Practically the only question presented is whether the steps taken by the school-district board and county superintendent to dismiss the teacher complied with section 7468 of the General Statutes of 1909. (Laws

1876, ch. 122, art. 4, § 24.)    The notice introduced in evidence reads:

"STERLING, KAN., November 20, 1907.
"We, the school board of district No. 8, county of Reno, state of Kansas, do hereby notify Laura Duncan, teacher of said school, to close and vacate said school.

"Charges of dismissal are incompetency and negligence.            JOHN NUSSER, *Treasurer.*
                                      I. E. DEADMOND, *Director.*
                                      C. C. JOHNSON, *Clerk.*
"Above approved November 23, 1907.    By A. W. HAMILTON."

Charles Johnson testified, in substance, that he was the clerk of the school district; that the district board met and considered the question of the teacher's competency; that he could not go down to see the county superintendent; that it was understood and agreed that the treasurer and the director should go the next day to see the county superintendent, which they did; and that he afterward signed the dismissal notice.

John Nusser testified that he was present at a meeting of the board at which the conduct of the school by the teacher was talked about; that the board met and talked the matter over three times; that he and Mr. Deadmond went to Hutchinson and talked the matter over with the county superintendent; and that all members of the board, after the meeting at the county superintendent's office, signed the notice of dismissal.

Mr. Deadmond testified that two weeks before the dismissal notice was prepared he visited the school; that all members of the board met thereafter and decided to go down to Hutchinson to see about the dismissal of the teacher; that Mr. Johnson, the clerk, had business which prevented him from going, and authorized Mr. Nusser and himself to go; that Nusser and he did go, and talked with the county superintendent about the school; that he told what he had observed as a visitor to the school, and the county superintendent told what he had observed when he visited the school;

that the county superintendent, Mr. Nusser and himself came to the conclusion that they should dismiss the teacher; that in two or three days thereafter the school board had another meeting, at which all were present; that they wrote out and all signed the notice of dismissal and authorized the director to take it to the county superintendent to indorse it, which was done, and the director then took the paper back and served it on Miss Duncan.

Testifying in regard to the meeting with the two members of the board, the county superintendent said, in substance, that they wanted her to quit and she was unwilling to do so, and he told them they could not dismiss her without his consent; that they made complaint that she did not keep order, and that the children were not learning anything; that he told them he was ready to pass his judgment, and there was only one way to do it, and that was by acting as they thought it should be done; that they said she should quit; that he and the two members of the board agreed in every respect; that afterward Mr. Deadmond brought the notice of dismissal to his office and he approved and signed it; that he had visited the school and talked with the teacher. Among the things referred to in relation to his visit to the school, he said the discipline was so bad that the teaching was of no consequence.

The teacher herself testified that the last week of school she had only two scholars, and that the week before she had twenty-three scholars.

As before stated, there was no evidence contradicting these statements. It is not contended but that the evidence of the plaintiff was sufficient to justify the verdict and judgment, if she was not legally dismissed. At the conclusion of the evidence the court was requested in writing to instruct the jury to return a verdict in favor of the defendant, and we see no reason why this instruction should not have been given.

The instructions of the court generally were correct,

and told the jury, in substance, that no formality was requisite in the proceedings of the school-district board and county superintendent; that if the school board and county superintendent had considered the matter and decided, however informally, to dismiss her, such acts would be sufficient to constitute a valid dismissal of the plaintiff under the law, and that their verdict should be for the defendant.

The fifth instruction, however, seems to submit the question of fact to the jury whether the school-district board and county superintendent did act in conjunction in dismissing the teacher. And it was undoubtedly argued there to the jury, as it is here, that to act in conjunction the school-district board must meet and organize as a tribunal, and that the action taken was not sufficient. Upon no other theory can we account for the second and fifth findings of fact, which follow:

"(2.) Did they [the two members of the board] together consider with the county superintendent the competency and negligence of the teacher? A. No.

"(5.) Did the two members of the board and the county superintendent agree that plaintiff should be dismissed? A. No."

Not only is there no evidence to support these findings, but they are directly opposed to all the evidence relating thereto. These findings should have been set aside or disregarded.

Other findings were as follow:

"(1.) Did two members of the board meet the county superintendent at his office a few days before the dismissal? A. Yes.

"(4.) Did Johnson, the clerk, know the time and place that the other two members of the board were going to meet and consult the county superintendent? A. Yes.

"(6.) Did Johnson, the other member, subsequently meet with the said two members and sign the order of dismissal? A. Yes."

The request for an instruction to return a verdict

for the defendant should have been allowed, and the motion for a new trial, on the ground that the verdict was not sustained by the evidence, should have been sustained. The judgment is therefore reversed, and the case is remanded with instructions to render judgment in favor of the defendant.