**Peter Valley, Appellee, v. Illinois Tunnel Company et al., Appellants.**

**Gen. No. 16,979.**

1. ELEVATORS—*ordinance regulating.* While plaintiff was lowering an elevator to admit a mail car, the latter was pushed against and struck the elevator platform, throwing plaintiff back from the hoisting cable and preventing him from stopping the elevator. The canopy struck the car, causing the elevator to tilt and plaintiff to plunge to the bottom. The elevator had been duly inspected and a certificate of compliance with section 659 of Ordinances of the City of Chicago duly issued. *Held,* that such certificate was conclusive as against counts based on non-compliance with such ordinance in failing to provide safety devices.

2. OFFICERS—*certificate conclusive.* A certificate of compliance with a penal statute or ordinance, having been duly issued by the proper official, where his determination involves the exercise of discretion and judgment, is conclusive evidence of compliance with such law.

3. OFFICERS—*acts not subject to review.* The official determination of facts within the scope of authority delegated to an administrative official is binding and conclusive on every one and not subject to collateral attack nor to judicial review except for fraud or where otherwise provided.

4. OFFICERS—*determination final.* Where the Constitution or the legislative branch of the government has delegated to an executive or administrative branch a duty which involves as an incident to its performance the exercise of judgment or discretion, as distinguished from judicial power, in determining the suitability or fit-

ness of certain matters or things, such exercise is not subject to review by the judicial branch.

5. OFFICERS—*exceeding authority.* Where a public official is charged with the exercise of discretion in the performance of his duty, the only questions that can be raised in court by any person denying the validity of his act are the power of the official and fraud of the party claiming rights under his act.

6. OFFICERS—*abusing power.* Where there is an abuse of power by an administrative public official, the court on application will compel him to perform his duty.

7. APPEALS AND ERRORS—*joint judgment.* Where a judgment against two joint defendants is found erroneous as to one, it must be reversed and remanded as to both.

8. ELEVATORS—*proximate cause.* Condition of an elevator not provided with a device to prevent tilting *held* not the proximate cause of injury.

Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed March 25, 1913. Rehearing denied and opinion modified and refiled April 8, 1913.

JOHN A. BLOOMINGSTON, for Illinois Tunnel Co.

SEARS, MEAGHER & WHITNEY, for Chicago & Western Indiana R. Co.; N. C. SEARS, EDWIN HEDRICK, JR., and SILAS M. WILEY, of counsel.

O'SHAUGHNESSY & O'SHAUGHNESSY, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This is an appeal from a judgment for $5,000 against defendants for personal injuries.

Plaintiff was an employe of the Tunnel Company and ran an elevator which carried mail cars up and down a shaft leading from the floor of the Railroad Company's depot to the tunnel about 50 feet below.

The construction was such that when the platform of the elevator was in apposition to the floor, the cars would readily run along rails from one upon the other.

On the occasion in question, while the platform was

about three or four inches above the floor, an attempt was made by employes of the Railroad Company to push the car into the elevator. It struck the platform and rebounded about three feet. While in a second attempt they were in the act of pushing the car into the elevator the plaintiff was lowering it, and as the front wheels of the car struck its platform the car became stuck, Valley was thrown back away from the hoisting cable so as to be unable to stop the elevator, and it continued downward, its canopy striking a projecting part of the mail car, thus causing the elevator to tilt, some parts to give way and break, and plaintiff to plunge to the bottom.

The liability of the Tunnel Company was predicated mainly upon an alleged violation of a city ordinance reading as follows:

"Section 659. Every passenger or freight elevator hereafter constructed * * * in any building within the city, shall be provided with some efficient device to secure the safe operation of such passenger or freight elevator in its running up or down, and such device shall be subjected to such practical test as may be determined by the commissioner of buildings to ascertain the efficiency of such safety device to properly perform the service for which it is intended; and it shall be the duty of the commissioner of buildings to cause to be made such test of each and every device upon any such elevator hereafter constructed, and no such elevator hereafter constructed shall be permitted to run until the inspection herein provided for has been made and a certificate issued by the commissioner of buildings or such inspector that the same has been inspected, and the certificate shall be posted in a conspicuous place in such elevator. Every passenger or freight elevator now in operation within the city shall be provided with some efficient device to procure the safe operation of such passenger or freight elevator in its running up and down, and such device shall be subjected to the same test as is herein provided for elevators to be hereafter constructed, and a certificate of such inspection issued as provided for elevators to

be hereafter constructed, and every such elevator now in operation within the city, or which may hereafter be constructed and operated in the city, shall be inspected under and by authority of the commissioner of buildings at least once every six months.  Every owner or agent of any building who fails to comply with any provision of this section shall be fined not less than fifty dollars nor more than two hundred dollars for each offense,    *    *    *."

The specific proof relied upon to show violation of such ordinance consisted of evidence showing that there were two devices, known as a ''governor'' and a ''slack cable stop,'' employed to secure the safe operation of elevators in running up and down.  An elevator inspector for the city of Chicago, called by plaintiff, testified that the elevator had two safety devices,—an automatic and a limit stop, the former to stop the car at the ordinary limit of travel both ways, and the latter to stop it when it went beyond that limit; that, however, they performed no function while the elevator was running up and down within such limits, and that the devices in general use for such purpose were the ''governor'' and ''slack cable stop.''  On cross-examination, however, he testified that at the time of this accident (February 21, 1908), there was no slack cable stop device in use on elevators of that construction, that none was invented until May, 1908, that a ''governor'' could not be employed upon an elevator of that type, and, therefore, as a factor of safety, an additional cable had been put at each corner of the elevator in question.   While these cables would not prevent the tilting of the elevator, it appears that there was no other device that would until the invention of the slack cable device aforesaid.

Whether or not such evidence was sufficient to show a violation of the ordinance, it appears that the chief elevator inspector for the city of Chicago made an inspection of the elevator and a report thereof to the commissioner of buildings, who issued a certificate of inspection, which was duly posted, stating that the con-

dition of the elevator machinery was good, and that "said elevator complied with the requirements of the ordinance." It is urged, and we think the authorities require us to hold, that said certificate constituted a complete defense to the counts based upon the violation of said ordinance.

This precise question was presented and decided in Bonbright v. Schoettler, 127 Fed. 320, which was also an action for personal injuries, based upon a violation of a statute. The court said:

"The controlling question in the case is whether the official certificate approving the fire escape, which was granted under the act of 1879, protected the defendant against the plaintiff's demand. In considering this question, we note at the outstart that the plaintiff's demand is founded on a statute which is of a penal nature. Upon the facts appearing, the defendant was under no common-law liability to the plaintiff. * * * What effect is to be given to a certificate approving an external fire escape, granted by the fire marshal and fire commissioners under the provisions of that act? The act does not in express terms declare the effect of the certificate, but it seems to us that, upon well-settled principles, such certificate, when properly issued in accordance with the terms of the act, must be taken as conclusive evidence of compliance with the law. It is an indisputable proposition that where power or jurisdiction over a subject matter, involving the exercise of discretion and judgment, is vested by law in a public official or a special tribunal, the determination of such officer or tribunal as to such matter, when regularly made and within the scope of the delegated authority, is valid and binding, and cannot be questioned collaterally."

The court cites United States v. Arredondo, 6 Pet. 691, where it is said:

"It is a universal principle where power or jurisdiction is delegated to any public officer or tribunal over a subject matter, and its exercise is confined to his or their discretion, the acts so done are binding and valid as to the subject matter, and individual rights will not

be disturbed collaterally for anything done in the exercise of that discretion within the authority and power conferred. The only questions which can arise between an individual claiming a right under the acts done, and the public, or any person denying its validity, are power in the officer and fraud in the party.''

It was also said in the Bonbright case, *supra,* that ''if the statutory certificate is not conclusive evidence of compliance with the law, there is no certain criterion available.''

The principle has been applied particularly in cases where the legislative branch of government has delegated to an executive branch a duty involving as an incident to its performance the exercise of judgment or discretion in determining the suitability or fitness of certain matters or things, such as identifying the character of lands (French v. Ryan, 93 U. S. 169; Ehrhardt v. Hogaboom, 115 U. S. 67; Burfenning v. Chicago, St. P., M. & O. Ry. Co., 163 U. S. 321; Rogers Locomotive Machine Works v. American Emigrant Co., 164 U. S. 559); ascertaining the existence of facts justifying exclusion of aliens (Japanese Immigrant Case, 189 U. S. 86; Nishimura Case, 142 U. S. 651; Tang Tun v. Edsell, 223 U. S. 673); determining to which class mail matter properly belongs (Bates & Guild Co. v. Payne, 194 U. S. 106); passing upon the sufficiency of plans and specifications to authorize a building permit. Hawke v. Brown, 28 App. Div. (N. Y.) 37.

While we are unable to find any case in this state in which this precise point has been decided, yet the Supreme Court, in discussing the distinction between the exercise of judicial power and of judgment and discretion in the performance of administrative and ministerial functions, has frequently recognized that the latter were not subject to review. As stated in People v. Thompson, 155 Ill. 451, 476:

''Full power and final authority to perform the different governmental functions must be lodged some-

where. * * * It would be a new doctrine, and one fraught with much danger, to hold that the courts may reverse or annul acts of the other departments in matters committed by the constitution to the judgment and determination of such other departments, or in matters where it is a question of serious doubt whether they are so committed or not, even although the courts might be satisfied that in the determination of the question by the department to which it is committed the constitution has not been properly observed.''

It has been held that an administrative body charged by statute with ascertaining and determining the qualifications to practice medicine, may grant, refuse or revoke a license as the circumstances may require (People v. Apfelbaum, 251 Ill. 18, 26); that an act is not invalid because it gives discretion to an inspector as to the number, location, material and construction of fire escapes (Arms v. Ayer, 192 Ill. 601); nor an ordinance because it gives a commissioner of public works the authority to approve a device to prevent the spilling of oil on streets (Spiegler v. City of Chicago, 216 Ill. 114); nor one which leaves to the chief of police the power to determine whether pictures or scenes are immoral (Block v. City of Chicago, 239 Ill. 251).

In the last cited case the court said that ''government could not be carried on if nothing could be left to the judgment and discretion of administrative officers,'' and that if there should be an abuse of power by the chief of police, the court on application would compel him to perform his duty. In the Thompson case, *supra,* the court said: ''The only remedy for dereliction of duty in such cases lies in the frequency of elections, by which the people may choose others to serve them, and in the impeachment and removal from office of those made subject to that punishment.'' If, as these cases hold or clearly intimate, the official determination of facts within the scope of authority thus delegated be so far conclusive as not to be subject to judicial review except for fraud or where otherwise

provided, it cannot be subject to collateral attack and must be binding and conclusive upon everybody.

Inasmuch as the ordinance in question provided for an official inspection to determine whether the elevator met the requirements thereof, and the issuance of an official certificate if it met them, and a penalty against the owner if the elevator was run without compliance with such requirements, the certificate, when so issued, afforded the owner of the elevator complete protection against any action based upon a claim of noncompliance with its provisions.

But it is urged that the record supports the judgment under the first count, which, so far as it relates to the Tunnel Company, charges a failure on its part to maintain and keep the elevator in a reasonably safe condition and repair and to provide necessary and proper machinery, appliances and safeguards for its operation.

In other words, we are asked to hold that where an elevator has been officially inspected for the express purpose of finding whether it contains such safety devices as are deemed necessary to render it reasonably safe for operation, and a license has been issued giving official assurance of that fact to the public, nevertheless without any claim or proof of fraud or incompetency on the part of the public officials, a jury is justified in finding it not reasonably safe merely because some sort of a device might have been adjusted that would have prevented the elevator from tilting.

To this contention it is enough to say that while the case was apparently tried on the theory of liability under the other counts already considered, the evidence was not sufficient to show that the elevator was not reasonably safe. It was manifestly not within the purposes for which it was designed and used that it should be in motion while a car was running into it. Plaintiff's theory is that had there been a device adjusted thereto to prevent "tilting," the accident would not have occurred, although the record clearly

shows that up to that time there was no device of that character, invented or used, that was applicable to that type of elevator. But it is plain that the elevator would not have tilted on the occasion in question had its canopy not struck the end of the car; and that had it not been moving, its canopy would not have hit the car. The proximate cause of the injury was not the condition of the elevator. Whether at that juncture plaintiff was negligent in moving the elevator or the railroad company's employes in attempting to push the car into it, or both, we need not here consider, for, whichever way the fact may be, the negligence could not be attributed to the Tunnel Company.

It was error, therefore, to deny the motion of the Tunnel Company to direct a verdict in its favor.

If the Tunnel Company were the only defendant, we would be required to enter judgment here in its favor; but as the record does not warrant our finding the facts necessary to enter judgment for both defendants, and as the judgment was a unit as to both defendants, being erroneous as to one, it must be reversed and remanded as to both. Supreme Lodge Knights of Honor v. Goldberger, 175 Ill. 19; Jansen v. Varnum, 89 Ill. 100; Claflin v. Dunne, 129 Ill. 241; West Chicago St. R. Co. v. Morrison, Adams & Allen Co., 160 Ill. 288.

A reversal being necessary for the reasons stated, it is needless to consider the other grounds urged therefor.

*Reversed and remanded.*