BAIRD v. SCHOOL DISTRICT No. 25, FREMONT COUNTY

(No. 1609; Apr. 29, 1930; 287 Pac. 308)

452

The cause was submitted for appellant on the brief of *O. N. Gibson* and *Donald Spiker*, both of Riverton, Wyoming.

454

The cause was submitted for respondent on the brief of *A. C. Allen,* of Riverton, and *W. E. Hardin,* of Lander.

BLUME, Chief Justice.

Eldred O. Baird, hereinafter mentioned as the plaintiff, brought this action against School District No. 25 of Fremont County to recover the salary for the school year of 1928-29.

The amended petition alleged the execution of a contract to teach in the High School for the school year of 1928-1929; that plaintiff was at all times ready and willing and able to enter upon the performance thereof, but that the dis-

trict, without any authority or right, discharged him from his employment, whereby he was damaged in the sum of $1590, for which he asked judgment. The answer admitted the execution of the contract and alleged that plaintiff was discharged for good and sufficient cause; that on September 8, 1928, and before plaintiff entered upon the discharge of his duties, he unlawfully committed an assault and battery upon his wife and was upon her complaint placed under arrest by the town marshal of Riverton and confined in jail until the evening of the following day; that he was thereafter duly arraigned before the police judge of the town, pleaded guilty to the charge and was fined the sum of $5.00; that, upon learning of the arrest and incarceration of the plaintiff, the school board summoned plaintiff to appear before it at a meeting duly held to determine whether or not he had been guilty of such misconduct as required his dismissal in the interest of the public schools; that plaintiff appeared before the board and that he was at the hearing adjudged to be guilty of misconduct as required his discharge. The main facts herein are not in dispute. The plaintiff is a teacher with a high degree of education. He was employed at Riverton, Wyoming, to teach in the high school during the school year of 1927-28, and was re-employed, under a contract containing no provisions for plaintiff's discharge, to teach during the following year, commencing on September 10, 1928. Plaintiff was married. On Saturday, September 8th, 1928, he was arrested by the town marshal on the verbal complaint of his wife and his mother in law for an alleged assault upon them. Plaintiff was placed in the town jail, where he remained until Sunday afternoon. He appeared before the police justice of the town the next morning, pleaded guilty, apparently to misconduct arising out of the alleged assault, and was fined the sum of five dollars. No written complaint, however, had been filed, nor was any record made of the proceedings before the police justice, seemingly to protect the plaintiff. The superintendent of the schools visited plaintiff in jail

on Sunday, and the next morning indicated to the latter that he would not be permitted to teach. Thereupon plaintiff called on the president of the school board, apparently to see if there were not some way by which plaintiff would be permitted to continue in the schools. He was given notice to appear before the board that afternoon, which he did. He was asked for an explanation of his conduct. According to the offered testimony of the members of the board, but not received in evidence, plaintiff stated that in the course of an altercation with his wife and his mother in law, he struck the latter in a fit of passion and struggled with his wife to recover possession of a broom with which she was threatening to strike him; that his conduct was actuated by ill temper, of which he was ashamed; that he acted hastily and without excuse; that he had been arrested and placed in jail; that the matter was, however, his private concern. The explanation was not deemed satisfactory and the plaintiff was discharged, according to the records of the school board, with a tender, however, to the plaintiff of a salary of two months, provided that he waived any claim which he might have against the school district. The plaintiff did not accept the offer and brought this suit, to recover the full salary for the year. The case was tried to the jury, and during the trial it was shown, over appellant's objection, by the wife, mother in law and father in law, that by reason of the delicate condition of plaintiff's wife on September 8th, 1928, and by reason of an injury received by her four years previously, she was highly nervous; that the plaintiff's mother in law also was of a highly nervous temperament; and that in truth and in fact the arrest of plaintiff above mentioned was asked as a result of a hysterical condition of the women, and not for any valid cause; that plaintiff did not in fact commit any assault and battery on either of the women, but that he simply tried to protect himself from an assault upon himself. The jury returned a verdict in favor of the plaintiff for the amount asked. From a judgment entered on the verdict, the school

district has appealed. Numerous errors are alleged, but we need not consider them in detail, but believe that the matters herein discussed will be sufficient for the final disposition of the case.

■ By Instruction No. 6 the court told the jury that the county superintendent has the general superintendence of the schools of the county; that under the law no teacher can be dismissed unless, pursuant to charges in writing, made by such superintendent against such teacher, and filed with the board of school trustees, a hearing is had and the charges are sustained by the board; and that unless the jury should find that these provisions of the law were complied with the verdict should be in favor of the plaintiff. This instruction was given upon the theory that the provisions of Section 1557, Wyo. C. S. 1920, providing for the procedure mentioned by the court, are controlling. But the contrary was held in Durst v. School District, 39 Wyo. 442, 273 Pac. 675, and the instruction, accordingly, was erroneous. Nor can it be said that it was not prejudicial, for in view of the fact that it was admitted that the proceedings above mentioned were not followed, the instruction was virtually a direction to the jury to return a verdict in favor of the plaintiff except as to the amount, and though the case was also submitted to the jury on another and wholly different theory, they may have returned their verdict pursuant to the stated instruction.

■ Counsel for the school district asked the court to instruct the jury, in substance, that if they found from the evidence that a legal meeting of the school board was held on September 10, 1928, for the purpose of considering the alleged misconduct of plaintiff; that notice thereof was given to plaintiff, and that the board, upon investigation of the facts, found just and reasonable cause for discharging plaintiff, such finding was final and conclusive and the verdict should be for the defendant. This instruction was not given, and, on the contrary, the court gave instructions dia-

metrically opposed thereto, telling the jury, in substance, by Instructions Nos. 1 and 5, that the action of the board in discharging the plaintiff was not conclusive; that the jury were the final arbiters of the existence of the ground for the removal, and that if they found from the evidence that the grounds for removal were insufficient, the verdict should be in favor of the plaintiff. These opposite theories present the main point in the case. It is of first impression here, is of considerable moment, both to the teachers of the state as well as to the various school districts, and we have, accordingly, given it the consideration which its importance seems to demand. The instructions given to the jury by the court necessarily proceed upon the theory that when a school district discharges a teacher, it stands in the same relative position as when a private employer discharges an employee, and that a school board's determination of the existence of just and sufficient cause for discharge, even though after a full and fair hearing upon notice to the teacher, has no greater legal effect than the determination of the ordinary employer of the causes justifying him in discharging anyone from his employment. Some of the cases, it is true, seem to maintain that theory. Taylor v. School District, 15 Ariz. 262, 138 Pac. 13; School District v. Morgan, 127 Okla. 193, 260 Pac. 46 and the Oklahoma cases there cited; Armstrong v. School District, 28 Kans. 345; Brown v. School District, 1 Kans. App. 530, 40 Pac. 826. See also 35 Cyc. 1097 and cases cited. In none of these cases, however, was a hearing held before the school board to determine whether or not a just cause for discharge existed, and it may be that in the absence of a statutory provision to the contrary, the action of the board of trustees in discharging a teacher without a hearing should, perhaps, place the school board in the same position as a private employer, the jury to be, within limits, the judge of the existence of the causes for removal and of the sufficiency thereof. In Colorado, however, the holding is, under a statute permitting dismissal of a teacher only for good cause *shown,* that

460

a hearing must be had, and that a dismissal otherwise made is invalid. School District v. Parker, 82 Colo. 385, 260 Pac. 521. But ordinarily courts have not, in the absence of an imperative statute, gone that far, as indicated by the cases already heretofore cited. And see State ex rel. v. Preston, 120 Wash. 569, 208 Pac. 47. Again, it is held that a board may dismiss a teacher at pleasure where the statute or the contract give the board that right. Jones v. Nebraska City, 1 Nebr. 176; School District v. Colvin, 10 Kans. 283; Gillan v. Board, 88 Wisc. 7, 58 N. W. 1042; People ex rel. v. Hubbell, 56 N. Y. S. 642. But the majority of the courts seem to hold that in the absence of a statute or a contract permitting removal at pleasure, principles of justice require that a hearing should be had after notice given to the party sought to be removed. 3 Abbott, Mun. Corp., 2430-31; 2 R. C. L. 619; 46 C. J. 990; State ex rel. v. Walbridge, 119 Mo. 383, 395, 24 S. W. 457, 41 Am. St. Rep. 663. And we shall assume, for the purposes of this case, that, in order to make the decision of the school board of any effect, a hearing, upon notice, was necessary, and the question is as to whether, notwithstanding a fair hearing given to a teacher upon notice, it is virtually a nullity, still leaving the matter in the hands of the jury, or whether, on the contrary, the hearing is binding in the absence of a review by some other tribunal, provided that a legal cause for discharge existed. The latter view is taken in 35 Cyc. 1095, where it is said:

"Where a school board dismisses a teacher in accordance with the statutory provisions, such act of dismissal is generally conclusive in the absence of fraud, corruption or oppression and is not subject to review by the courts."

In the case of Finch v. School District, 225 Mich. 674, 196 N. W. 532, the court said:

"The board followed a proper practice in appointing a time and place of hearing and in giving plaintiff due notice thereof. 3 Abbott, Mun. Corp., 2430, 2431. The rule that

in an action for wrongful discharge from employment the burden of showing good and sufficient cause for such discharge rests upon defendant after plaintiff has proved his contract and its performance by him up to the time of discharge * * * is not applicable here. The school board, a deliberative public body, in the exercise of a right, here reserved by contract, went to a hearing, quasi-judicial in character, and, having grounds to sustain its finding, found that plaintiff had been guilty of gross immorality and dismissed him. Surely, the school district may not be required to accept the finding of a jury upon this question rather than the finding of its school board. If such finding by the school board may be reviewed and reversed by a jury, the government of our schools may be impaired and the position of school boards in dealing with such cases will be precarious indeed. Such finding and determination of the board are conclusive unless the board acted corruptly, in bad faith, or in clear abuse of its powers. A verdict should have been directed for defendant.''

In the case of McCrea v. School District, 145 Pa. 550, 557; 22 A. 1040, 1041, the court said:

"The board, by the statute, is empowered both to employ teachers, and for any one of these causes to dismiss them. It would greatly impair the government and efficiency of the common schools, if the honest judgment and discretion of the board, exercised in good faith, could be reviewed and reversed by a jury. Such a policy would place the practical management and control of the schools on very precarious and uncertain ground. Every consideration of private interest, or of public policy, requires that this quasi-judicial power of the board should be recognized. The absolute impossibility of placing the jury in the position of the school board, with the school and its instructors before them, demonstrates the fact that it would be unwise and impracticable to do otherwise. * * * This board of school directors investigated the charge of incompetency, by personal visitation of the school in their official capacity, and decided the question, in the teacher's presence, upon their own knowledge of what they saw and heard. * * * In this view of the case, it is plain that, in the absence of any evidence that the members of the board acted corruptly, or in bad faith, or that they were

guilty of any clear abuse of their powers, the jury should have been instructed, at the defendant's request, to find for the defendant."

Again, in the case of Whitehead v. School District, 145 Pa. 418, 429, 22 A. 991, 993, the court said in part:

"As a deliberative body, a board of school directors is instructed with the government of the schools, and by the statute is empowered both to employ teachers, and for the causes stated to dismiss them. The board, therefore, had jurisdiction under the statute to pass upon any charge of this character, and in its determination was held merely to the exercise of good faith, and was answerable only for an abuse of its powers. By the mere fact of his employment as a teacher, the plaintiff submitted himself to the jurisdiction of the board in respect of the matters mentioned in the statute, and the action of the board * * * is conclusive."

See to the same effect Toye v. School Dist., 225 Pa. 236, 74 Atl. 60. In the case of Jones v. Nebraska City, 1 Nebr. 176, in mentioning the same point, though the case is otherwise not in point, the court said as follows:

"With a Board of Education rests a high responsibility. The qualifications for a successful teacher are various. The considerations which might move a Board of Education, who are presumed to act for the best interests of the community they represent, in the exchange of teachers, may be good and proper, and still not sufficient in law. To act in such cases upon the hazard of being endorsed by the verdict of a jury would be very embarrassing."

The Supreme Court of Kansas, in the case of School District v. Davies, 69 Kans. 162, 76 Pac. 409, 411, which cites a number of cases, said as follows:

"It would tend greatly to impair the government and efficiency of the public schools if the honest judgment and discretion of this tribunal, so exercised, was subject to review."

In the case of Kelsey v. School District, 84 Mont. 453, 276 Pac. 26, 27, the court said:

"Some one must judge whether the school is functioning properly. Discretion must be reposed somewhere, and here the law reposes it, first, in the trustees, and, next, in the supervising officers elected for their special knowledge of schools and school problems. 'That the courts will not interfere with the discretion of school officials in matters which the law has conferred to their judgment, unless there is a clear abuse of that discretion, or arbitrary or unlawful action, seems to be the unanimous holding of the authorities.' State ex rel. Ingersoll v. Clapp, 81 Mont. 200, 263 Pac. 433. 'It is for the board of education, within the reasonable exercise of its power and discretion, to say what is best for the successful management and conduct of the schools, and not for the courts.' * * * In respect of employing and discharging teachers we say, as was said in Peterson v. School Board, supra, (73 Mont. 442, 236 Pac. 670) 'In this, and all like questions properly coming before them, the members of the board act in a quasi-judicial capacity, and, with the proper exercise of their discretion and judgment, the courts will not interfere.''

See also Hays v. Independent School District, 45 Ida. 464, 262 Pac. 862.

The principle just mentioned has frequently been applied in cases of removal of officers. A teacher, strictly speaking, is but an employee (State ex rel. v. Preston, supra), and yet in some respects at least may properly be regarded as a public officer. Mechem, Public Officers, Sec. 726. In any event, the cases dealing with the subject of removal of public officers are perhaps most nearly analogous to the situation here, and it is almost the universal holding that in such case the action of the removing officer or body will not be reviewed except to inquire into the existence of jurisdictional facts, including the point as to whether the cause assigned is a legal one. People v. Shawver, 30 Wyo. 366, 222 Pac. 11; State ex rel. Loomis v. Dahlem, 37 Wyo.

498, 263 Pac. 708; 45 C. J. 994; Throop, Public Officers, Sec. 394-398.

And this rule, so applied, is but an application of a more general rule, based upon the division of governmental powers, announced at least a century ago, that where the decision of a question of fact has been committed to a particular officer or body of officials, his or its determination will not ordinarily be reviewed by the courts and is not open to collateral attack, except as may be provided by statute, and unless there is an abuse of discretion or fraud upon his or its part. 45 C. J. 1033, 1034. In Allen v. Blunt, 3 Story 746, Fed. Cas. No. 216, decided in 1845, Mr. Justice Story said as follows:

"In short, it may be laid down as a general rule, that, where a particular authority is confided to a public officer to be exercised by him in his discretion upon an examination of facts, of which he is made the appropriate judge, his decision upon these facts is, in the absence of any controlling provisions, absolutely conclusive as to the existence of these facts."

And in United States v. Arredondo, 6 Peters 691, 729, 8 L. Ed. 547, decided in 1832, the Supreme Court of the United States said:

"It is a universal principle, that, where power or jurisdiction is delegated to any public officer or tribunal over a subject-matter, and its exercise is confided to his or their discretion, the acts so done are binding and valid as to the subject-matter, and individual rights will not be disturbed collaterally for any thing done in the exercise of that discretion within the authority and power conferred. The only questions which can arise between an individual claiming a right under the acts done, and the public, or any person denying its validity, are power in the officer and fraud in the party. All other questions are settled by the decision made or the act done by the tribunal or officer, whether executive, legislative, judicial, or special, unless an appeal is provided for, or other revision, by some appellate or supervisory tribunal, is prescribed by law."

This language was virtually repeated in the case of Belcher v. Linn, 24 How. 533, 16 L. Ed. 758. And in 12 C. J. 894 the general principle is stated that:

"The courts are without jurisdiction to interfere with and to control an executive officer in the exercise of any power or the performance of any duty of an executive or administrative character in which the constitution contemplates the exercise of discretion by such officer. In the exercise of executive powers, judicial discretion must not be substituted for executive discretion."

This principle has been applied in innumerable cases where administrative officers, as members of school boards are, have been called on to use discretion. That is true, for instance, in cases in which the license of a physician or a dentist was revoked, and in which the consequences, of course, were much more serious than in the case at bar. People v. Apfelbaum, 251 Ill. 18, 95 N. E. 995; Traer v. State Board, 106 Ia. 559, 76 N. W. 833; State ex rel. v. State Board, 34 Minn. 387, 26 N. W. 123; Meffert v. State Board, 66 Kans. 710, 72 Pac. 247, 1 L. R. A. (N. S.) 811; Richardson v. Simpson, 88 Kans. 684, 129 Pac. 1128, 43 L. R. A. (N. S.) 911. So, too, the granting and revocation of licenses to commission merchants or the supervision of films may be entrusted to a board, whose action, if in good faith, has been held not to be subject to review by the courts. State ex rel. v. Mohler, 98 Kans. 465, 158 Pac. 408; Midwest Photo Play Corp. v. Miller, 102 Kans. 356, 169 Pac. 1154. For other illustrations see enumeration in Valley v. Illinois Tunnel Co., 178 Ill. App. 388. And this court has at all times applied this principle, whenever we have had occasion to do so—to hearings in cases of removal of officers, as in People ex rel. v. Shawver, supra, and State ex rel. v. Dahlem, supra; to hearings before the Board of Land Commissioners, as in Miller v. Hurley, 37 Wyo. 344, 262 Pac. 238, and previous cases there cited; to a hearing before a school board as to re-districting school districts,

as in Chicago, B. & Q. R. Co. v. Byron School District, 37 Wyo. 259, 260 Pac. 537.

Is the rule thus universally applied inapplicable to hearings before a school board in connection with the discharge of teachers? We think not. Counsel for plaintiff say that it should not be applied because there is no express statute providing for such discharge, and because the contract in question reserves no such right. But we held in the Durst case that the power to employ implies the power to discharge. Additional authorities are: Tadlock v. School District, 27 N. Mex. 250, 199 Pac. 1007; Wallace v. School District, 50 Nebr. 171, 175; 3 Abbott, Mun. Corp., 2430. That is true, we think, particularly in view of Section 2330, Wyo. C. S. 1920, which appears to give unlimited control of school matters to the school boards, providing: ''Educational matters affecting the school district shall be under the care of the district board of school trustees.'' The principle is analogous to a similar one apparently universally held, namely, that the power of appointment to an office carries with it the power to remove, unless limited or restricted, or unless the term is fixed by statute. 46 C. J. 985, 22 R. C. L. 562. That rule of law is as much a part of every contract of employment of teachers as though it were expressed or referred to therein. 13 C. J. 560, 6 R. C. L. 855. We are unable to see how an implied power under the statute is or can be any less a part of such contract than an express power, for what the law will imply is as much part and parcel of a legislative enactment as though set forth in terms. State ex rel. v. Walbridge, 119 Mo. 383, 395, 24 S. W. 457, 41 Am. St. Rep. 663; State ex rel. v. Board, 108 Mo. 235, 18 S. W. 782; Sutherland on Stat. Construction, Sec. 334. This power, express or implied, cannot, in the absence of other provisions, be contracted away. That is a universal principle. Thus it is said in Dillon's Municipal Corporations, 5th Ed., Sec. 245:

''Powers are conferred upon municipal corporations for public purposes; and as other legislative powers cannot, as

we have just seen, be delegated, so they cannot, without legislative authority, express or implied, be bargained or bartered away. Such corporations may make authorized contracts, but they have no implied power, as a party, to make contracts or pass by-laws which shall cede their control or embarrass their legislative or governmental powers or which shall disable them from performing their public duties.''

In Queen v. Governors of Darlington School, 6 Q. B. 682, 115 Eng. Reprint 257, 270, it was held that where letters patent gave the governors of the Darlington School, established by a charter, the power to remove a teacher according to their sound discretion, no by-law was valid which required the removal to be made only after charges were preferred and a hearing had. In the case of Gillan v. Board of Regents, 88 Wisc. 7, 58 N. W. 1042, 24 L. R. A. 336, the court held that no contract could be made with a teacher which in any way limited the power of the Board under a statute which gave it the right to remove at pleasure. Similar in effect is Barbour v. Mercer County, 85 W. Va. 359, 101 S. E. 721. The fact that in these cases the power to remove was at discretion or at pleasure does not make them any the less applicable here. That simply goes to the extent of the power of removal. The principle is that, whether the power be great or small, extended or restricted—Whatever it is, it cannot be bartered away. According to the Durst case, removal of a teacher may be only for cause, and we may assume, as heretofore stated, that it should be only upon notice and a hearing. But these limitations aside—and there are none other in the statute—the power of the school board to remove a teacher cannot be contracted away.

And the reasons for the rule, that the determination of a school board should be final when a teacher is discharged for cause after notice and hearing, are certainly just as cogent when the right to discharge is implied under the statute, as well as when it is given expressly. To make the jury the final arbiter of the sufficiency of the cause of dis-

missal in all cases would to a large extent take the power of removal away from the school board; for that board, fearful that the jury might not agree with it, would hesitate to act, and in most instances shrink from dismissing a teacher, though adequate cause might exist, lest, among other reasons, double liability might be placed upon the district, compelling it to pay both the discharged teacher as well as the teacher employed in his or her place. The instant case is a good illustration. The board had before it certain facts; the teacher was put in jail by reason of some sort of encounter with his wife and mother in law; he had pleaded guilty, though informally, and had been fined the sum of $5.00. According to the offer of evidence of the school district, the plaintiff admitted his guilt but claimed that it was his private affair. When the case was tried to the jury, an altogether different set of facts appeared. The wife, the mother in law, and the father in law, all testified exonerating the plaintiff from blame and causing it to appear that the arrest was unlawful and a flagrant violation of the plaintiff's rights. That situation is apt to arise in any case of domestic difficulties, and hence, no matter how notorious these might be, no matter how seriously it might impair the standing and reputation of the teacher in the community, the school board would be virtually forbidden to discharge the teacher, unless it would be willing to cast upon the district the double liability heretofore mentioned. A similar situation might arise in many other cases, for new evidence would frequently be found, not existing or obtainable at the time of the hearing before the school board, which would make the state of facts appear altogether different in the trial held long afterwards before a jury. In other words, by making the jury the final arbiter would to a large extent take the control and charge of the schools, vested by law in the school board, away from it and substitute the jury in its place. This would not be for the best interests of the schools, and we do not believe that such was the intention of the legislature.

■ If the statute prescribes the procedure on removal, that must be followed. 46 C. J. 993, 24 R. C. L. 618. No provision as to the method of removing teachers, when the occasion arises, has been made by our statute. It is held that in such case the power to adopt means necessary to effectuate the power of removal is conferred as incident thereto, and in that event the removing power may adopt its own procedure. 46 C. J. 993; State v. Walbridge, 119 Mo. 383, 24 S. W. 457; Ridgway v. Fort Worth, (Tex. Civ. App.) 243 S. W. 740; Bourbon County School District v. McCoy, 30 Kans. 268, 1 Pac. 97; 24 R. C. L. 619. We need not mention the point as to whether or not a hearing is necessary any further, and, as heretofore stated, we are assuming that it was, in order to give any effect to the decision of the school board, and we shall, accordingly, pass on to the point of the fairness of the hearing given in this case. It is claimed that a written notice should have been given, specifically describing the charge against plaintiff, and that the plaintiff's statement before the board should not be accepted as any proof against him, since it should be treated as an admission in a criminal case. But proceedings of the character here in question are remedial, rather than penal; they are authorized for the good of the public service and not as punishment, and are not governed by the strict rules of court procedure. 46 C. J. 993; In re Mason, 147 Minn. 383, 181 N. W. 570. The principle that no witness shall be compelled to testify against himself is not applied and it is not improper to interrogate the person sought to be removed. 46 C. J. 994 (note 45). In School District v. Shuck, 49 Colo. 526, 113 Pac. 511, 513, the court said:

"While there need be no formal pleadings and trial before the board with the rules and formalities of court procedure, good cause shown means specific accusation, notice, evidence of the charge before the board in its official capacity, and an opportunity to the teacher to be heard and refute the charge."

In the case of People ex rel. v. Board, 251 N. Y. 156, 167 N. E. 204, 207, the court said:

"Decision is entrusted to men who cannot be presumed to be learned in technical rules of law; common sense dictates the conclusion that they may not be required to apply rules which lie beyond what they may be presumed to know. Their decisions must, of course, be based upon a consideration of the relevant facts and a fair opportunity must be afforded to present to them such facts as should properly enter into their decisions. Even where an officer may be removed only for 'some legal cause, to be ascertained and adjudged as matter of fact upon a hearing' we have said that 'some latitude is allowed as to rules of evidence, methods of examination and the like, but no essential element of a fair trial can be dispensed with unless waived, and no vital safeguard violated without rendering the judgment of conviction subject to reversal upon appeal."

In the case of Duncan v. School District, 83 Kans. 580, 112 Pac. 102, 103, the court said among other things:

"The instructions of the court generally were correct and told the jury in substance, that no formality was requisite in the proceedings of the school district board and county superintendent; that if the school board and county superintendent had considered the matter and decided, however informally, to dismiss her, such acts would be sufficient to constitute a valid dismissal of the plaintiff under the law, and that their verdict should be for the defendant."

See to a similar effect Courtright v. School District, 203 Ia. 26, 212 N. W. 368; Farish v. Young, 18 Ariz. 298, 158 Pac. 845. In the case of Chohock v. School District, (Iowa) 228 N. W. 585, it was held that an irregularity in the hearing did not permit the court to review the matter, and that the court can only do so when there is want of jurisdiction. In the case of Bourbon County School District v. McCoy, 30 Kans. 268, 1 Pac. 97, 46 Am. Rep. 92, it was claimed as here, that specific charges in writing were necessary, but the court held that not to be true. That claim was also made in the

case of People ex rel. v. Campbell, 50 N. Y. Super. Ct. 82, 90, but the court said:

"Under this authoritative exposition of the law governing the case at bar, and there being no requirement that the information concerning the cause of the proposed removal must be in writing, it must be held that the conversation shown by the return to have preceded the service of the formal notice on May 15, 1883, conveyed sufficient information to the relator of the cause of his proposed removal and constituted a sufficient opportunity to him to make his explanation; that as no question was then and there raised in respect to the right to be represented by counsel, such right, if it existed at all, was waived."

In State ex inf. v. Hedrick, 294 Mo. 21, 52, 241 S. W. 402, it was held that while the regular procedure is for the removing power first to introduce evidence, this may be waived and is waived when the person sought to be removed introduces his testimony.

In the case at bar there was no charge in writing, and though it would, perhaps, be better to follow that course, we do not believe that to be one of the essential things necessary for a fair hearing, provided that the person sought to be removed is fully cognizant of the alleged cause for removal. Judging from the record, the plaintiff knew fully what the complaint was, namely, the encounter which he had had in his home on the Saturday previously and the arrest and imprisonment subsequent thereto. He had an interview with the superintendent of schools on Sunday, had a talk with the president of the board on Monday, and in his statement to the board—assuming that it was made substantially as claimed—he clearly indicated that he knew exactly why the hearing was had. He apparently admitted all the substantial facts, did not ask for counsel, though he had seen one on Sunday, and if it is true, as claimed, that he substantially admitted his guilt of misconduct, it is not surprising that he did not ask for the opportunity of producing any witnesses, and so far as the record indicates we

cannot agree with counsel for plaintiff that the procedure before the school board was "inequitable, inhuman, a travesty on justice." In fact the offer of two months' salary, too, would seem to indicate that the board wanted to be fair. Hence the real question seems to be as to whether or not the facts as they then appeared before the board were such as to constitute a legal cause for removal.

■ It may not always be easy to determine what constitutes a legal cause for removing a teacher. In State ex rel. v. Preston, supra, continued inability to maintain discipline was held to be sufficient. It was said in City of Crawfordsville v. Hays, 42 Ind. 200, that a teacher agrees "by necessary implication, that while he continues in such employment, his moral conduct shall be in all respects exemplary and beyond just reproach." And not merely good character, but also a good reputation is essential to the greatest usefulness in such a position. Freeman v. Bourne, 170 Mass. 289, 49 N. E. 435, 39 L. R. A. 510. Entrusted as the teacher is with the education of the young, it becomes of primary importance that the principles of right living be by him instilled into them by his example and by his conduct. In Queen v. Governors of Darlington School, supra, it was said, among other things:

"For there may be many causes which render a man altogether unfit to continue to be a schoolmaster, which cannot be made the subject of charge before a jury, or otherwise of actual proof. A general want of reputation in the neighborhood, the very suspicion that he has been guilty of the offences stated against him in the return, the common belief of the truth of such charges amongst the neighbors, might ruin the well being of the school if the master was continued in it, although the charge itself might be untrue, and at all events the proof of the facts themselves insufficient before a jury."

In School District v. Maury, 53 Ark. 471, 14 S. W. 669, it was said:

"This contract necessarily implies that he is competent to teach properly, and that he will conduct himself in a moral and skillful manner in discharging his undertakings. If he can not or will not do either, he violates the contract and its termination comes through his breach. We do not mean to say that every act of immorality would be a breach of the contract to justify its termination; but it would be such whenever, from the character or notoriety of the act, it impaired the services of the teacher in properly instructing or advancing the pupils. A teacher might properly instruct, yet his character for morality be so notoriously bad that he would lose the respect of his pupils and fail to advance them. He would not then be a competent teacher, though there were no defect in his learning or facility to impart it."

In the case of McLellan v. Board, 15 Mo. App. 362, it was held that a teacher might be removed upon his being charged in a divorce suit with having committed various acts of adultery. The court in the course of the opinion said:

"There may be causes for the removal of a teacher affecting the discipline of the school over which he presides, entirely outside of any question of his learning, ability, power of enforcing discipline, or moral qualities, and outside of his own acts, as in the present instance. It was not for the board of directors to prejudge, or even to examine, the charges brought against this teacher by his wife; but the mere fact that charges of this character were brought against him, and that the fact had become notorious, rendered it highly inexpedient that he should remain as a teacher of higher classes frequented by youths between the ages of fourteen and twenty. It is unnecessary to dwell upon this. Such would be the common sense of all fathers and mothers having a parental regard for the morals of their children."

What is the situation here? Riverton is a small community. The arrest of plaintiff and his confinement in jail were unusual, and the fact thereof was apt to be on the tongue of every one in the community, including the

school children. The cause thereof — an encounter with his wife and mother in law—was apparently admitted, not only by the plea of guilty, though that was irregular and informal, but also by the statement made by the plaintiff himself before the board. In that statement—if we take the offered testimony as true—he admitted that he struck his mother in law in a fit of passion; that he had acted hastily, without excuse and that his conduct was actuated by high temper. Even though we, sitting as the board, might not have terminated plaintiff's employment, still we cannot say that the foregoing facts did not present a legal or a reasonable cause for removal, for they must be judged, under the principles of law heretofore stated, not from the standpoint as they appeared before the jury, but as they appeared before the board. If plaintiff was not at fault, as indicated by the testimony of his wife, his mother in law and his father in law, that fact should have been made known to the board by their testimony before it. But it was not, and the board had to take the facts as they appeared then; and the ultimate responsibility for the whole unfortunate outcome herein cannot so much be laid at the door of the board as it must be attributed to the action, seemingly hasty and ill-considered, of the two women in question and to the action and statements of the plaintiff himself, though he, possibly, was therein actuated by a spirit of chivalry which proved to be false and delusive. And it is clear that the belated testimony of plaintiff's wife, mother in law and father in law before the jury, then fully exculpating and exonerating plaintiff, had no tendency to show as to whether or not the board had a legal cause and just grounds for the removal, and their testimony should have been excluded, on objection, unless the facts testified to had been shown to have been brought home to the school board or the members thereof before the order of discharge was made.

■ Other questions as to the exclusion of testimony are raised herein. The proceedings before the school board above mentioned and the incidents thereof, together with all the facts brought out at that time, were, of course, all proper to be shown, for the purpose of proving that plaintiff was given a hearing and that he had due notice thereof. Unless it appears hereafter that no such notice was given, or that plaintiff did not have a fair hearing, judgment should be given for defendant. We have already sufficiently indicated that the objection to such testimony on the ground of the want of a written charge was not well taken.

The testimony of the police judge to show that the plaintiff pleaded guilty to the charge of misconduct or other similar charge was not admitted, on the ground that no information was filed against the plaintiff and no record of the charge was made. But this is not a review of the proceedings before the justice. No matter how informal or irregular the proceedings before him may have been, they contained at least an admission of the plaintiff of his guilt of the misconduct, and to some extent at least tended to show the undesirability of retaining plaintiff as a teacher. The ground, accordingly, on which the testimony was excluded was not good. Other questions as to the admissibility of testimony along the same line are suggested by the record, but are not argued, and we must, accordingly, pass them by. It is unnecessary at this time to consider the alleged error of excluding testimony to show that plaintiff might have obtained other employment, inasmuch as this point may not again arise in another trial. See 17 C. J. 1020-1021.

The judgment of the District Court is accordingly reversed, and the cause remanded for further proceedings not inconsistent herewith.

*Reversed and Remanded.*

KIMBALL and RINER, JJ., concur.