## Wilmerding Borough School District Board of School Directors *v.* Gillies, Appellant.

Argued November 25, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*I. Edward Roth,* for appellant.

*V. L. Barbor,* with him *George V. Moore,* for appellee.

*Claude T. Reno,* Attorney General, with him *George J. Barco* and *Orville Brown,* Deputy Attorneys General, for Commonwealth, intervenor.

*Allen H. Kerr* and *Judson A. Crane,* for amicus curiæ, intervenor.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, January 5, 1942:

James Gillies, a teacher in the public schools of the Borough of Wilmerding, was charged by the directors of its School District, (1) with having chosen as his companions and associates, communists and persons of radical political belief who advocate the overthrow of government by unlawful means; (2) with having advocated and upheld the principles of the communist party, thereby acquiring a reputation for himself among people of the community of being a communist; (3) with having signed a nomination paper for the nomination of a candidate of the communist party, as a result of which his name was published in the newspapers as a signer of such a paper, causing much undesirable notoriety. Summing up the charges it was alleged that his conduct was immoral and that thereby he had rendered himself incompetent as a teacher in the district.

The Act of May 18, 1911, P. L. 309, Sec. 1205, as amended, 24 PS §1126, specifies the grounds upon which

a school teacher may be dismissed in the following language: "The only valid causes for termination of a contract entered into with a professional employe in accordance with the provisions of this section shall be—immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe."

After hearing, the directors of the School District, by unanimous vote, discharged Gillies on the grounds of immorality and incompetency. On appeal to the Superintendent of Public Instruction, that official reinstated him. The Court of Common Pleas, without taking any further testimony than that given before the School Board, overturned the finding of the Superintendent of Public Instruction and directed his discharge. From this action, he has taken this appeal.

Both in oral argument and in briefs, the case has taken a wide range before us, much wider than it warrants. As stated by the learned Attorney General, who intervened, in his brief and at Bar, "If the school board has failed to sustain its charges by sufficient, competent and relevant evidence", the decision of the court should be reversed. That is the real and controlling issue. Do the proofs offered justify the dismissal?

A careful reading of all the testimony convinces us, that the thing which brought about the action of the school board was the newspaper publication of the fact that he had signed the nomination papers for a candidate for Congress of the communist party. Had he not taken this injudicious and wrong-headed course, it would seem improbable that proceedings would have been brought against him. There is no evidence that he is a communist. He is a registered democrat, secretary of the local democratic club and committee. The paper he signed was not a nominating petition, to validly sign which he would have to be a member of the communist party, but a nominating paper, with no such require-

ment. (Act of June 3, 1937, P. L. 1333, Sec. 951, 25 PS §2911). The reason for his signing it, so he testified, was because the candidate for whom he signed was his neighbor and lifelong friend. At the time he signed, the communist party was a lawful party in Pennsylvania, and he said he believed "in minority rights for minority groups." He testified that he was not a communist, that he did not believe in the principles of that party, had never advocated or upheld them, had not chosen as companions and associates persons who were communists, or of radical political beliefs who advocate the overthrow of the government by unlawful means. He says he believes in the United States form of government and disbelieves in overthrowing it.

No witness said he was immoral in the usually understood and accepted meaning of that word. It is not denied that intellectually and so far as teaching ability is concerned he is competent. In fact it is admitted that he is.

Turning to the testimony produced by the school board, we find: The supervising principal of the school said that the question had been raised with him and the school board about Gillies' association with members of the communist party, and as a result of this, he had been changed from teaching English and History to teaching Physics and General Science, so that he would not have the opportunity to comment to the pupils "on the various social parties." The principal warned him that if his association with members of the communist party continued, some action might be taken; this was before he signed the nomination paper. A witness, Reiter, who did not know respondent or his associates, said he never heard him referred to save as a communist, but admitted that this was after it became public that he had signed the nominating paper. Speelman, a bartender, said some of those with whom he had seen him in his establishment were thought to be communists. He named two, one a doctor. He said Gillies' general reputation was good.

Chamberlain, another witness, said he had seen Gillies with the doctor, who is considered one of the leaders of the communists. Apparently this witness' idea as to Gillies arose out of his signing the nomination paper. Morrison, a citizen of the borough, who has a child attending Gillies' classes, said he objected to his teaching the child if he has the reputation of being a communist. He did not know Gillies. He said there was no general protest against him, that what he knew or heard was just a matter of conversation. He assumed he was a communist, because he signed the nominating paper. Kimmick, another witness, asked as to Gillies' reputation as a communist, said he knew nothing about it, except that he saw, by the newspaper, he had signed the paper, that he does not know him and nothing about him except that he was "supposed to have signed some kind of a communist nominating petition." A witness, Donaldson, interrogated as to Gillies' reputation as a communist, replied that he only knew of it after the newspapers published his name as a signer of the nomination paper and that from that time on there was a good deal of talk about him. He said that in his opinion, after it was published that Gillies had signed the paper, he did not have the respect and confidence of the community. He did not personally know Gillies. Another witness, Clements, similarly testified. The secretary of the school board testified that the board received a protest from the American Legion after the newspaper publication. This was the whole case against appellant. Witnesses called by him testified that he is a democrat and that his reputation for morality is excellent.

There is not sufficient in the testimony to warrant dismissal of respondent on the grounds of "immorality" or "incompetency" as we have construed those terms in *Horosko v. Mt. Pleasant Township School District,* 335 Pa. 369, 371, 6 A. 2d 866. The conduct of the teacher under the facts of that case merited her dismissal. As to appellant, the evidence in the record before us is too meagre to justify such a conclusion.

The order of the court below is reversed. Costs to be paid by the School District.

Mr. Justice DREW dissents.