## Intille v. Hoyer

*Lois G. Forer*, for plaintiff.

*C. Brewster Rhoads* and *Edward B. Soken*, for defendants.

PER CURIAM, April 6, 1954.—On February 16, 1954, plaintiff, a Philadelphia public school teacher, refused to answer questions of the House Un-American Activities Committee, concerning subversive activities and associations connected with the Communist Party, unless the congressional committee first agreed to terms which she proposed. These terms would have restricted the scope of the committee's inquiries drastically. The

committee refused to abide by her demands whereupon plaintiff refused to answer and invoked the privilege against self-incrimination granted by the fifth amendment to our Federal Constitution.

On February 19, 1954, Dr. Louis P. Hoyer, Superintendent of Schools in Philadelphia, suspended plaintiff, pending a hearing before the entire board of education on the ultimate question of her dismissal. This hearing is scheduled for some time in April of 1954, together with other teachers similarly suspended.

In considering administrative process, the usual casebook approach must be reversed and attention first directed to the applicable statute. We think primarily in terms of legislative declaration and the limitations of the applicable rules must be sought within the statute itself.

Plaintiff contends that the Public School Code of March 10, 1949, P. L. 30, 24 PS §11-1124, provides for suspension of a teacher only for the following three reasons: (1) Substantial decrease in pupil enrollment; (2) curtailment or alteration of the educational program; (3) consolidation of schools, when such consolidation makes it unnecessary to retain the full staff of professional employes; and that none of the above three causes here obtain. So far as plaintiff goes, it is perfectly true that the section summarized above does not cover the suspension here under attack.

Plaintiff was suspended on the ground that she had shown a lack of fitness to be a teacher in displaying conduct unbecoming her professional status in that she had failed to answer questions which in good conscience she should have been willing to answer candidly as to any affiliation with subversive organizations.

Since this ground is not enumerated in the section of the statute set forth above, plaintiff concludes that the suspension is improper and therefore merits the intervention of this court.

But the act does not lend itself to the tortured construction advanced by plaintiff. Because a teacher passes certain qualifying grades, she is not automatically so secure in her position that if she commits some act detrimental to society or to the children placed in her charge, the superintendent of schools is powerless to dismiss the teacher pending a final hearing by the board of education.

The act contains as a matter of course certain implied powers to control the activities of a member of the teaching staff in or out of the school itself. It was held in Horosko v. Mount Pleasant Township School District, 335 Pa. 369, that where a teacher has not the respect or good will of a community as the result of her conduct, she may be dismissed. It has also been frequently stated by our courts that a teacher may be charged with incompetency even though his scholastic ability is not impugned. See Fenstermacher's Appeal, 36 D. & C. 373; Horosko v. School District, supra, and Commonwealth ex rel. v. Sunbury School District et al., 335 Pa. 6.

The tenure provision of the Public School Code is to be considered in the light of the fundamental public policy to obtain better education for the children of the Commonwealth and to provide the best educational facilities for them. (See Swick v. Tarentum Borough School District, 141 Pa. Superior Ct. 246.)

In Batrus' Appeal, 148 Pa. Superior Ct. 587, it was held that immorality of a public school teacher is not limited to sexual deviation but includes a course of conduct which is offensive to the morals of the community and would be a bad example to the youth whose ideals the teacher is supposed to foster and elevate.

Certainly the refusal of plaintiff to answer questions of a duly constituted committee of our Congress is a dreadful example for a teacher to set for her pupils. Whether plaintiff is a subversive or not, such

wretched conduct before a committee of the highest legislative branch of our Republic, can only foster in the impressionable children under her tutelage, a settled contempt and arrogance for our country and its lawmakers.

Plaintiff is not deprived of her right to any views to which she may subscribe. But ". . . the legislature can certainly prescribe qualifications for teachers in the public schools with respect not only to their academic attainments but also to their moral characters and their loyalty to the state and federal governments": Albert Appeal, 372 Pa. 13(18).

Mr. Justice Minton is also quoted in the Albert Appeal, supra, when, in speaking for the Supreme Court of the United States, he said:

" 'It is clear that such persons have the right under our law to assemble, speak, think and believe as they will. . . . It is equally clear that they have no right to work for the state in the school system on their own terms. . . . If they do not choose to work on such terms, they are at liberty to retain their beliefs and associations and go elsewhere'."

The suspension in the instant case is for outside activities, which if upheld by the board at the April hearing, are inherent grounds for suspension pending the dismissal. If they are not upheld, then plaintiff will be made whole and entire without any intervention by this court. See Horvat v. Jenkins Township School District, 337 Pa. 193, where it was held that if a dismissal is wrongful plaintiff will recover not only her salary, but full damages for breach of contract.

The act provides for plaintiff to appeal an ultimate dismissal to the Superintendent of Public Instruction of the Commonwealth of Pennsylvania *and then* to the court of common pleas: 24 PS §11-1122 et seq.

In the Paden Appeal, 80 D. & C. 125, 130, it was held:

"The support, control and supervision of the public school system is, therefore, vested, by the Constitution in the General Assembly, and in the administrative agencies created by the General Assembly for this purpose, and not in the Courts."

See also Mangan v. McNair, Mayor, 321 Pa. 446; Crawford v. Clairton City et al., 334 Pa. 120, 123, and Skidmore et al. v. Swift & Co., 323 U. S. 134, 137.

Plaintiff is seeking to short-circuit the exclusive procedure provided by the Public School Code, namely by a hearing before the board of public education, with the right of appeal as set forth hereinabove. Administrative remedies must be exhausted before court proceedings can be instituted.

Accordingly, plaintiff's exceptions to the order dismissing the complaint in equity are dismissed.