99 Pa. Commonwealth Ct. 337 (1986)
513 A.2d 547
Harold J. Keating, Jr., Petitioner
v.
Board of School Directors of the Riverside School District, Respondent.
No. 2190 C.D. 1985.
Commonwealth Court of Pennsylvania.
Argued May 12, 1986.
July 30, 1986.
Argued May 12, 1986, before Judges MacPHAIL and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.
*338 John T. McLane, with him, Thomas J. Foley, Jr., Thomas J. Foley, Jr., and Associates, P.C., for petitioner.
Andrew Sislo, for respondent.
OPINION BY JUDGE MacPHAIL, July 30, 1986:
Petitioner, Harold Keating, Jr. appeals an order of the Secretary of Education (Secretary) which affirmed his dismissal by the Board of School Directors of the Riverside School District (Board). We affirm.
The facts as found by the Board and adopted by the Secretary include the following:
1. Mr. Harold Keating is a 36 year old male professional employee of the Riverside School District who is employed as a teacher of History at the Riverside Jr.-Sr. High School.
....
3. Beginning at some point during the Spring of 1983 Mr. Harold Keating attempted to initiate a social/emotional relationship with [a sixteen year old] . . . sophomore student at the Riverside Jr.-Sr. High School (hereinafter referred to as `Student').

*339 4. Thereafter, Mr. Keating continued to pursue a social/emotional relationship, including an attempt to establish a summer date with the Student.
5. Mr. Keating's efforts and pursuits intensified during early December 1983, and . . . on December 4, 1983 Keating sent a complete clothing out-fit (sic) to the home of the Student, which the Student returned.
6. Mr. Keating wrote a public `love note' on the black board of a classroom of the Riverside Jr.-Sr. High School stating publically (sic) that he loves [Student] ... This writing was viewed by the Student, her classmates, teachers and an Administrator.
7. Mr. Keating made further telephone calls to the residence of the Student, including one wherein he requested to speak to . . . [the] mother of the Student, and stated to [her] . . . that he desired to date the Student for 2 years and then marry her. He also made the same statement to the Student.
8. Mr. Keating sent Christmas flowers to the Student with a note attached stating `Love, Harold Keating, Jr.' to the residence of the Student on December 22, 1983.
9. Further, Mr. Keating sent a handwritten love note to the Student at her residence along with the gift referred to in paragraph 5 . . . which Keating identified as his handwriting and acknowledged sending to the Student.
10. The Student did not provoke or encourage the actions of Mr. Keating in any manner whatsoever and simply desired to maintain a pure teacher-student relationship.

*340 11. The Student did not consent to the advances of Mr. Keating in any manner whatsoever.
12. The Student was and continues to be embarrassed and adversely affected by these events...
13. Administration made every reasonable effort to avert continuation of these events by arranging several conferences with Mr. Keating to counsel and advise him to refrain from any attempts to engage in a social/emotional relationship with the Student. The Administration met with Mr. Keating for these purposes on December 13, 1983, December 15, 1983, December 21, 1983 and January 3, 1984.
....
16. Mr. Keating offered several witnesses who testified to his general moral character but no witness presented by Mr. Keating offered any rebuttal testimony. Mr. Keating himself on both direct and cross-examination admitted much, if not all, the testimony presented by the Administration.
Keating was dismissed on April 4, 1984 for reasons of immorality, persistent and willful violation of school laws and incompetency as provided under Section 1122 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1122. Keating appealed to the Secretary on May 2, 1984 and thereafter gave notice of intent to offer additional testimony before the Secretary. The Secretary denied the request for additional evidence and subsequently affirmed the decision of the Board on the bases of immorality and persistent and willful violation of school laws.
In a recent case, our Supreme Court addressed and clarified the respective roles of the Secretary and this Court in appeals by aggrieved professional employees. *341 Belasco v. Board of Public Education of the School District of Pittsburgh, 510 Pa. 504, 510 A.2d 337 (1986) (Nos. 49, 50 and 51 W.D. Appeal Docket 1985, filed June 3, 1986). It was there stated that our powers of review are limited to those prescribed by Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704. We, moreover, may not review the actions of administrative tribunals involving acts of discretion absent a showing of bad faith, fraud, capricious action or abuse of power. Pennsylvania State Association of Township Supervisors v. State Ethics Commission, 92 Pa. Commonwealth Ct. 544, 499 A.2d 735 (1985).
Keating first contends that the Secretary abused her discretion by refusing to hear additional testimony. Under the provisions of the School Code, the decision to hear additional testimony is within the discretion of the Secretary who may "hear and consider such additional testimony as he may deem advisable to enable him to make a proper order." Section 1131 of the School Code, as amended, 24 P.S. §11-1131. In addition, regulations at 22 Pa. Code §351.8(c) require that notice of intent to offer such testimony must be delivered to the Secretary and to opposing counsel at least fourteen days before the hearing and shall include: "(1) the name and position of each person who is to offer testimony; and (2) an explanation of the purpose and scope of the testimony to be offered." Here, Keating's request was delivered to the Secretary on June 19, 1984, just ten days in advance of the scheduled hearing date, and the notice gave no explanation of the purpose or scope of the testimony to be offered. In view of these facts, we cannot say that the Secretary abused her discretion in refusing to accept Keating's additional testimony.
Keating next contends that the Secretary erred in determining that sufficient evidence existed to support his dismissal on the grounds of immorality and persistent *342 and willful violation of the school laws.[1] We disagree. Immorality as used in Section 1122 of the School Code has been judicially defined as "a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and to elevate." Horosko v. Mount Pleasant Township School District, 335 Pa. 369, 372, 6 A.2d 866, 868 (1939), cert. denied 308 U.S. 553 (1939). We have no hesitancy in concluding that Keating's continual public pressing of affections upon a sixteen year old student without any provocation or encouragement on her part and in blatant disregard of several requests to stop constituted substantial evidence to support his dismissal on the basis of immorality.
Likewise, we conclude that substantial evidence exists on the record to support the determination that Keating engaged in persistent and willful violations of school laws. This ground for dismissal has been interpreted to encompass the failure of a teacher to comply with orders of his superiors on numerous occasions. Balog v. McKeesport Area School District, 86 Pa. Commonwealth Ct. 132, 484 A.2d 198 (1984). Here, Keating was specifically ordered on several occasions by the administration to cease pursuing a relationship with the student but he persistently disobeyed these orders and continued his advances toward the student. His failure to comply with these directives warranted the conclusion *343 that he persistently and willfully violated school laws.
Keating finally contends that his due process rights were violated inasmuch as the Board failed to afford him the same due process afforded mentally incompetent defendants in criminal hearings. Specifically, he argues that his inability to recognize his conduct as wrong rendered him mentally incapacitated to stand trial. We note initially that Keating's allegations, if true, would not be sufficient to establish mental incompetency in a criminal proceeding wherein the standard to be applied is not the M'Naughten "right or wrong" test, but the defendant's ability to comprehend the nature of the proceedings against him and his ability to cooperate with counsel. See Commonwealth ex rel. Hilberry v. Maroney, 424 Pa. 493, 227 A.2d 159 (1967).
Assuming, however, that Keating's allegations would be sufficient for such due process rights to arise in the criminal context, we do not believe it appropriate to extend such safeguards to these administrative proceedings. Due process is a flexible standard which affords varying degrees of procedural protections according to the precise nature of the governmental function and the private interest involved, Morrissey v. Brewer, 408 U.S. 471 (1972), and procedural standards required in criminal cases may not be required in civil or administrative proceedings. See Gagnon v. Scarpelli, 411 U.S. 778 (1973); Wilkins v. Unemployment Compensation Board of Review, 93 Pa. Commonwealth Ct. 367, 502 A.2d 283 (1985). In the case of Mathews v. Eldridge, 424 U.S. 319 (1976), the United States Supreme Court stated:
[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the *344 risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, included the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews v. Eldridge, 424 U.S. at 335.
Keating's private interest affected by the Board's action is his right to public employment as a teacher. Society's interest is in the education of its youth and the prevention of harassment of students by those entrusted by society with their social and educational development. Balancing Keating's interest in his employment against the community's substantial interest in the protection and welfare of its youth, and taking into account the minimal possibility of resultant error from the procedures used in this case,[2] we decline to extend to Keating the due process safeguards afforded mentally incapacitated criminal defendants.
Finding no error of substantive law or procedural process and being satisfied that there is substantial evidence in the record to support the Secretary's critical findings of fact and that none of Mr. Keating's constitutional rights were violated, we are obliged to affirm the Secretary's order.

ORDER
The order of the Secretary of Education, is affirmed.
Judge COLINS concurs in result only.
NOTES
[1] Keating argues that the findings of immorality and persistent and willful violation of school laws cannot be supported by substantial evidence inasmuch as he lacked mens rea owing to his psychiatric problems. Because this argument was not raised below, it must be deemed waived. See Lesley v. Oxford Area School District, 54 Pa. Commonwealth Ct. 120, 420 A.2d 764 (1980). Moreover, we note that while mental instability goes to mitigating circumstances, it would not alter the legal conclusion that Keating engaged in disqualifying conduct. Id.
[2] Keating does not contest the fact that the Board complied with the School Code's specific due process procedures set out in Section 1127 of the School Code, as amended, 24 P.S. §11-1127.